## The Frankford and Bristol Turnpike Co. *versus* The Philadelphia and Trenton Railroad Co.

1. There being in the charter of a railroad company no prescribed limit of approach towards buildings and bridges, the company may locate their roads and stations on such route and at such points as in their judgment will be beneficial to their own and the public interest.

2. The emission of sparks from the stack of a locomotive is not in itself illegal, and the loss of property adjacent to a railroad from the sparks apart from misuse, is *damnum absque injuria*.

3. The law in conferring the right to use an element of danger, protects the person using it, except for the abuse of his privilege, but in proportion to its danger will arise the degree of caution and care he must use.

4. Great danger demands higher vigilance and more efficient means to secure safety.

5. It is the duty of railroad companies running their engines close to buildings, to use the utmost vigilance and foresight to avoid injury.

6. It is the duty of companies to control their engines carefully, to adopt every known safeguard, and to avail themselves from time to time of every approved invention to lessen their danger.

7. Questions of skill, vigilance, care and proper management in any business, are questions of fact to be referred to the jury.

8. The degree of care having no legal standard, such care must be required as is ordinarily sufficient under similar circumstances to avoid the danger and secure the safety needed.

9. It is the duty of railroad companies to adopt the best precautions against danger in use, and it is not sufficient for them to exercise what under circumstances of less risk would be ordinary care.

10. The court below charged, "if the defendants used ordinary skill in procuring a good and safe spark-catcher such as are most in use in the country and approved by experienced railroad operators and mechanics, they would not be required to use any other or greater care or skill in respect to the spark-catcher used by them." *Held*, not to be error.

11. Evidence of the practice and common use of a stack by many others in the same business is admissible on the question of the safety of the stack.

[F. and B. Turnpike Co. *v.* P. and T. Railroad Co.]

12. If the construction of the stack was that which was best adapted for the purposes in known practical use, the duty of the company was performed.

13. Negligence is the absence of care according to the circumstances.

February 19th 1867. Before WOODWARD, C. J., THOMPSON, STRONG and AGNEW, JJ. READ, J., sick.

Certificate from Nisi Prius.

This was an action on the case to January Term 1866, by The Frankford and Bristol Turnpike Road Company against The Philadelphia and Trenton Railroad Company, for compensation for the burning of a bridge of the plaintiffs.

The plaintiffs were a company incorporated to make a turnpike road from Philadelphia to Morrisville, on the Delaware river. In 1805 they were authorized to build a bridge over Neshaminy creek, near Bristol, Bucks county. The bridge was a wooden superstructure on stone piers, and was built shortly after they obtained the authority.

About 1832 the defendants located their railroad and bridge near the turnpike ; the distance between the roads at the northern end of the bridge was forty or fifty yards. Since that time the defendants located a station about 400 feet north of the bridge for the accommodation of the people at Bridgewater, near the bridge. It was shown that an engine under ordinary headway would run 600 feet with the steam shut off, but stopping at the station, required putting on steam to carry the train over the defendants' bridge. On the 29th of April, shortly after a train of defendants had passed, the bridge of plaintiffs was discovered to be on fire, and was soon destroyed. There was evidence of the emission of sparks having been seen at the time the train passed. The fuel used was wood, and the spark-catcher on the engine was the " Yankee Stack." The proof was that this stack was most generally in use in the northern part of the United States, but not so much in the southern states. Several other kinds of stacks were spoken of by the witnesses, and different opinions given as to their comparative merits. The general opinion was, that the Yankee Stack was amongst the best arrangements for steaming purposes ; but there was evidence that there were others in use which were more secure as to the emission of sparks. There were different opinions expressed as to the comparative danger of wood and coal for fuel.

The plaintiffs requested the court to charge :—

1. If the defendants neglected to supply the engine, which is alleged to have fired plaintiffs' bridge, with the best and most perfect form of spark-catcher in use, for the purpose of guarding against the emission of sparks, and if, in consequence of such neglect, sparks were emitted which fired the plaintiffs' bridge, that without some proof of concurring neglect on the part of plaintiffs in originating the fire, they are entitled to recover.

2. If the defendants located their railroad in close proximity

[F. and B. Turnpike Co. *v.* P. and T. Railroad Co.]

to the plaintiffs' bridge, after the erection of the latter, it became incumbent upon them, in the management of their engines, to use very great vigilance, and adopt every precaution to guard the plaintiffs against injury therefrom.

3. It was incumbent upon the defendants to use such fuel in propelling their engines as would, whilst enabling them to obtain a proper degree of speed, be least liable to endanger the plaintiffs' bridge by the emission of sparks.

4. It was the duty of the defendants to provide themselves with the best and most approved form of spark-catcher in use, for the purpose of guarding against the emission of sparks, and if they failed so to provide themselves with such spark-catcher, this is evidence of negligence on their part.

5. If it was possible for defendants, whilst running under an ordinary head of steam, to have shut it off, and run by plaintiffs' bridge without emitting sparks, and that, by stopping at a station a short distance above the bridge, they were prevented taking this precaution, this is evidence of carelessness on part of defendants.

Thompson, J., before whom the case was tried, answered:—

" 1 and 4. The degree of care to be observed by the defendants is ordinary care, and the absence of this care, if it appear by sufficient proof, is evidence of negligence. I therefore say, that if the defendants used ordinary care and skill in procuring good and safe spark-arresters, such as are most in use in the country, and approved by experienced railroad operators and mechanics, they would not be required to use any other or greater care or skill in respect to the character of the spark-arrester used by them. If having exercised this care, and used ordinary skill and care in using it and their engine at the time of the accident, they would not be answerable. Did the company (the defendants) fail in due care in this particular ? If so, the plaintiffs are entitled to recover if the fire was communicated from the defendants' engine. If, on the contrary, this care was exercised by the defendants, the plaintiffs cannot recover.

" 2. If the defendants used ordinary care in view of the circumstances of the station, it is all that is required..

" 3. In regard to fuel the same rule of ordinary care applies. Was the fuel used on this occasion any other than ordinary fuel ? Indeed, there is some diversity as to whether coal or wood emits most sparks, or is the most dangerous species of fuel.

" 5. I decline to answer this point in the affirmative, but say to you that the defendants are answerable only for the want of ordinary care and skill in the particulars referred to in this point. To require the defendants to do everything possible to avoid injury to the plaintiffs' property, is asking too high a degree of care, and one not required by law."

[F. and B. Turnpike Co. *v.* P. and T. Railroad Co.]

There was a verdict for the defendants; and the answers to the points were the errors assigned.

*J. G. Johnson* and *W. F. Judson*, for plaintiffs in error.—It is the duty of railroad companies to adopt the best precautions against danger in use, and it is not sufficient for them to exercise what, under circumstances of less risk, would be ordinary care: Kelsey *v.* Barney, 2 Kern. 425. Where the risk is great, great vigilance is demanded; where it is small, less will suffice. Ordinary prudence would dictate the adoption, not of ordinary precautions, but of the best in known use: Freemantle *v.* L. and N. W. Railway Co., 100 E. C. L. R. 95; 8 Jur. *Negligence;* Ford *v.* London and S. W. Railway Co., 2 F. & F. 730; 8 Barb. 366; Id. 427; Rood *v.* New York and Erie Railroad, 18 Id. 80; Vaughan *v.* Taff Vale Railway Co., 5 H. & N. 684.

As to the true standard by which to judge the means employed: Bradley *v.* Boston and M. Railroad Co., 2 Cush. 540.

From the peculiar position and construction of the bridge, in consequence of the defendants locating their track close to it, it was unusually exposed, and extra care was required: New York and Erie Railroad *v.* Young, 9 Casey 175; Fletcher *v.* Boston Railroad, 1 Allen 9; Wilde *v.* Hudson River Railroad, 33 Barb. 503; Johnson *v.* Hudson River Railroad, 20 N. Y. 65.

"Negligence," in Vaughan *v.* Taff Vale Railway Co., 5 H. & N. 686, was defined as "an absence of care according to the circumstances:" Bilbee *v.* Railway Co., 114 E. C. L. R. 592; Penna. Railroad *v.* Ogier, 11 Casey 72; Penna. Co. *v.* Kilgore, 8 Id. 296; Beatty *v.* Gilmore, 4 Harris 465; Reeves *v.* Del. and Lack. Railroad, 6 Casey 461; Johnson *v.* Hudson River Railroad, 6 Duer 633; Holmes *v.* Watson, 5 Casey 459; Phila. and Reading Railroad *v.* Spearen, 11 Wright 305; Huyett *v.* Phila. and Reading Railroad, 11 Harris 373; Fero *v.* Buffalo and State Line Railroad Co., 22 N. Y. 209; Pigott *v.* Eastern Counties Railway, 3 M. G. & S. 235; Lehigh Bridge *v.* Lehigh Nav. Co., 4 Rawle 25; 9 Jur. pt. 1, *Negligence;* Manchester S. J. Railway *v.* Fullerton, 14 C. B. N. S. 54; Lawrence *v.* Railway Co., 71 E. C. L. R. 643.

*A. I. Fish* and *J. E. Gowen*, for defendants in error.— 1. The defendants are liable only for the negligent burning of the plaintiff's property: Beaulieu *v.* Finglam, P. 2 H. 4, fo. 18, pl. 5, Anno 1400; Ross *v.* Hill, 2 C. B. 890; Digest, B. XLVII., tit. IX., pl. 11; Railroad Co. *v.* Yeiser, 8 Barr 366; Huyett *v.* Philadelphia & Reading Railroad Co., 11 Harris 374; McCully *v.* Clark & Thaw, 4 Wright 408; Lackawanna and Bloomsburg Railroad *v.* Doak, 2 P. F. Smith 379.

2. The defendants are not liable for loss or damage occasioned by fires from the use of locomotives in the absence of negligence,

[F. and B. Turnpike Co. v. P. and T. Railroad Co.]

or where reasonable care and skill has been exercised in the construction and running of locomotive engines. Like natural persons, they are bound in the exercise of their rights, to use reasonable care and skill, and are liable only for negligence or a want of such care and skill: Piggott v. The Eastern Counties Railroad Co., 3 Com. B. R. 228; Aldridge v. The Great Western Railroad Co., 2 Eng. Rail. Ca. 852; McCready v. The South Carolina Railroad Co., 2 Strobhart 356; Ellis v. The Portsmouth and Roanoke Railroad Co., 2 Iredell 138; Railroad Co. v. Yeiser, 8 Barr 366; Burroughs v. Housatonic Railroad, 15 Conn. 124; Rood v. N. Y. & Erie Railroad, 18 Barb. 80; Lyman v. Boston & Worcester Railroad, 4 Cush. 288; Chapman v. Atlantic, &c., Railroad, 37 Maine 92; Herring v. Wilmington & Raleigh Railroad, 10 Iredell 402; Vaughan v. Taffvale Railroad Co, 3 H. & N. Excheq. Rep. 751; The King v. Pease, 4 Barn. & Adolph. 30; Longman v. The Grand Junction Canal, 3 Fost. & Fin. 736, 1863; Mashier v. The Utica Railroad, 8 Barb. 427; Bordentown & South Amboy Turnpike v. C. & A. Railroad & Trans. Co., 2 Harrison 314; Aldridge v. The Great Western Railway Co., 3 Manning & Granger 515; Burroughs v. The Housatonic Railroad Co., 15 Conn. R. 124; Balt. & Sus. Railroad v. Woodruff, 4 Maryland 242; Sunbury & Erie Railroad v. Hummell, 3 Casey 99; Sheldon v. Hudson River Railroad, 14 N. Y. (4 Kernan) 218; Lehigh Valley Railroad v. Lazarus, 4 Casey 203; Fero v. Buffalo Railroad, 22 N. Y. (8 Smith) 200; Freemantle v. London & N. W. Railway, 10 C. B. 95; Longman v. The Grand Junction Canal Co., 3 F. & F. 736; Brand v. Hammersmith & City Railway, 1 Law Rep. Q. B. 130; Cook v. Champlain Transp. Co., 1 Denio 91; McCandless v. McWha, 10 Harris 261.

The opinion of the court was delivered, May 13th 1867, by

AGNEW, J.—The duty of the defendants to provide sufficient spark-catchers for their locomotives, and the degree of care they should use in passing bridges and other structures near their track, are the two questions raised in this case. The right to use steam locomotives on their road is not questioned. No prescribed limit of approach towards buildings and bridges being alleged, the right must be conceded to the company of locating their roads and stations upon such route and at such points as, in the judgment of the directors, would be beneficial to the interest of the corporation and of the public. The proximity of the station and of the line of the road to the plaintiff's bridge, cannot in itself be considered a ground of legal liability, but an element only in ascertaining the degree of reasonable care to be used under the circumstances. Steam being generated by heat, and there being no known means of producing combustion without a draught of air, which carries off sparks from the fuel, the emission of sparks

[F. and B. Turnpike Co. *v.* P. and T. Railroad Co.]

from the stack of a locomotive is not in itself illegal. A loss of property adjacent to a railroad, from the sparks of a locomotive, apart from misuse, is therefore *damnum absque injuria*.

The law, in conferring the right to use an element of danger, protects the person using it, except for his abuse of his privilege. But in proportion to the danger to others will arise the degree of caution and care he must use who exercises the privilege. Great danger demands higher vigilance and more efficient means to secure safety—where the peril is small less will suffice. It is undoubtedly the duty of a railroad company using such dangerous machines fired up to intense heat, and running in close proximity to our houses and valuable buildings, to use the utmost vigilance and foresight to avoid injury. The locomotive symbolizes enterprise, and attests the march of improvement and civilization, but social interests are not advanced by refusing to limit its destructive tendencies, and to protect life and property against its misuse. It is the duty of those who use these hazardous agencies to control them carefully, to adopt every known safeguard, and to avail themselves from time to time of every approved invention to lessen their danger to others.

These principles are abundantly supported by the authorities adduced on both sides, which we refer to without a particular citation here. But the difficulty arises in their practical application. Questions of skill, vigilance, care and proper management in any business are necessarily questions of fact and are to be referred to a jury. They depend upon the circumstances of each case. What is care in one case may be negligence in another, where the danger is greater and more care is required. The degree of care having no legal standard, but being measured by the facts that arise, it is reasonable such care must be required which it is shown is ordinarily sufficient under similar circumstances to avoid the danger and secure the safety needed. Ordinary care is, therefore, the only rule which can be stated by a court. But as the degree of care is measured in every case by its circumstances, that which is ordinary care in a case of extraordinary danger would be extraordinary care in a case of ordinary danger, and that which would be ordinary care in a case of ordinary danger would be less than ordinary care in a case of great danger. With these views we cannot controvert the proposition enunciated by the plaintiff in error, that it is the duty of railroad companies to adopt the best precautions against danger in use, and it is not sufficient for them to exercise what under circumstances of less risk would be ordinary care. But did the judge lay down a different rule in this case? We think not. He stated ordinary care to be the legal requirement; but it was that ordinary care which belonged to the circumstances of this case, not that which was sufficient in another of less risk. In his answer to the plaintiff's

[F. and B. Turnpike Co. v. P. and T. Railroad Co.]

2d point he said, if the defendants used ordinary care, in view of the circumstances, it is all that is required. It was these circumstances which constituted the case before the jury. His charge therefore was, that which is ordinary care in such circumstances of extraordinary danger if the case be such, is the care required. He was not stating a comparison of the degrees of care between circumstances of different degrees of danger, but announcing the rule for the case before the jury, to wit, that the care ordinarily sufficient to avoid the danger in like circumstances is required.

Care according to the circumstances being the rule, we must not overlook what the judge said upon the particular subject to which this care related. In his answer to the 1st point he said, if the defendant used ordinary skill in procuring a good and safe spark-catcher, such as are most in use in the country and approved by experienced railroad operators and mechanics, they would not be required to use any other or greater skill or care in respect to the spark-catcher used by them—now clearly this was an application of the rule to the very case before the jury, and not to one of less danger in which the care required would be less. The bridge was burnt by sparks from the passing locomotives, and the question was whether the defendants had used the proper care and skill in providing spark-catchers for the stacks of their engines. The rule of ordinary care given by the judge was certainly up to the circumstances of the case and not below.

The next complaint is made of the instruction that general use would justify persons in selecting such a spark-catcher of ordinary usefulness. On this point the judge also said, " Now this is a question of ordinary care, if these stacks are adopted on these great lines (referring to the leading railroads of this state), would it be negligence in others to go by them ; would it not be safe to follow in their footsteps ; could you attribute negligence if they did what is done in a large number of cases ?" The fault which it is thought attaches to this instruction is in giving the practice of others as a guide instead of that which is proper and efficient to the purpose. But that was not the judge's meaning. He had already stated that the spark-catchers must be good and safe, and such as are approved by experience. When he spoke of the stacks in the ordinary use of the leading railroad companies, he referred to their practice, not as a rule of decision, but as a matter of evidence, assisting the jury to judge what sort is ordinarily safe. As evidence of the quality of a stack, certainly the practice and common use of many others in the same business, whose interests are deeply involved in the safety of the stack, are not to be rejected. It is not a fair or a correct interpretation of the instruction to separate the practice used as the evidence of the qualities of the stack from the absolute qualities stated, to wit, its goodness and safety as approved by experienced

[F. and B. Turnpike Co. *v.* P. and T. Railroad Co.]

persons. It is to those following the same employment, whose business it is to know and whose interest it is to use the best, we must generally go to find out that which is the best. It is not everything which looks well in theory that works well in practice. In mechanical contrivances especially is it true that that which is approved by experience as the best, is commonly found to be so. The language of Chief Justice Erle, in Vicemantle *v.* London and N. W. Railway, 10 C. B. 95 (1861), is quite to the purpose, that " if the construction was that which was best adapted for those purposes, in known practical use at the time the alleged cause of action arose, the duty of the company was performed." Nor should I look to entire uniformity in practice in a matter so difficult of accomplishment as this. To secure a sufficient draught to produce combustion, and yet arrest the sparks which proceed from it, is to reconcile counteracting forces. I know no better proof of so difficult a problem than its practical accomplishment as far as it has been. When something certainly better is invented, and approved by the only true test of mechanical contrivances, practical experiment continued long enough to test its real utility, then railroad companies will be bound to adopt it.

The second question is the degree of care to be used by the defendants in passing adjacent structures. Schenk's station is between three and four hundred yards distant from the railroad bridge over the Neshaminy creek, and the railroad bridge was distant from plaintiff's bridge one hundred and fifty feet at the Bristol end and three hundred feet at the Philadelphia end. It is necessary after stopping at Schenk's station to let on steam to start the train and carry it beyond the bridge. The plaintiffs' position is that their bridge should not have been passed under steam, and that the station should not have been placed so near. But this is inconsistent with the clearly-granted rights of this company to locate the route and fix the stations to suit their and the public convenience. In the absence of proof of a special motive to do injury, we must presume the location was made for proper ends and not to do mischief. To hold therefore that it is improper to stop at this station, and that steam must be shut off in passing over the Neshaminy, is to abridge the proper and ordinary use of the road. The injury in this case did not arise from any special act of negligence, but from the customary and lawful use of the road. The cases referred to as authorities on this point are instances of departures from the customary use of the track. That use will not justify stopping to blow off steam through the mud-valves at a common crossing, where many horses pass, and are frightened by the noise ; or stopping in a high wind opposite a new house in the process of building, where the burning cinders and sparks are carried through the open doors by the

wind.   In these cases the engineer might have found other and safer places to stop, and his act was not an ordinary use of the track.   Negligence has been defined to be the absence of care according to the circumstances; but it certainly never has been held that steam must be shut off in passing even in close proximity to dwellings, though many lines of railroad run within a few feet of valuable houses, mills and manufactories, and indeed through towns and cities.   I know no greater protection to which a bridge is entitled than a dwelling filled with inmates.

Finding no error in the charge, the judgment is affirmed.