HENRY HOYE *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

June 8, 1891.

**Railway—Degree of Care Required to Prevent Fires from Locomotives—Use of Improved Appliances—Question for Jury.**—While railway companies are not bound to use every possible precaution which the highest scientific skill might have suggested to prevent the escape of fire from their locomotives, yet they are required to exercise a degree of care reasonably proportionate to the risks to be apprehended; and, in view of the great danger to property from fires communicated from passing locomotives, reasonable care requires that they should avail themselves of the best approved practicable appliances for the prevention of such fires. Whether, in this case, the defendant was negligent in continuing the use of a certain kind of engine, was, under the evidence, a question for the jury.

**Same—Destruction of Standing Timber—Measure of Damages.**—In an action to recover for the destruction of a grove of trees standing upon a farm, the measure of damages is the value which the trees added to the farm, which may be proved by showing the value of the farm with the trees standing on it, and then its value with the trees destroyed. Following *Carner* v. *Chicago, St. Paul, M. & O. Ry. Co.*, 43 Minn. 375.

**Evidence—Impeachment of Witness.**—A witness having testified that he saw the fire which caused the injury start from another source, it was proper, for the purpose of impeachment, to ask him if he had not stated at a certain time and place that it started from the locomotive.

**Charge—Harmless Error.**—While an instruction that "it was the duty of the defendant to supply the engine with the best known and ascertained

appliances to prevent the escape of fire," considered as a general abstract statement of the law, may not be strictly accurate, yet in this case, when taken in connection with other parts of the charge modifying or explaining it, and considered in the light of the only evidence to which it could be applied, it contained no prejudicial error.

New Trial—Newly-Discovered Evidence.—Rules laid down in former decisions, as to granting new trials on the ground of newly-discovered evidence, considered and applied.

Appeal by defendant from an order of the district court for Pipestone county, *Perkins*, J., presiding, refusing a new trial after verdict of $367.55 for plaintiff.

*Andrew C. Dunn*, for appellant.

*P. E. Brown, W. N. Davidson*, and *W. E. Akers*, for respondent.

MITCHELL, J.   This is an action for damages for the destruction of part of a grove of trees growing upon plaintiff's farm, by fire negligently communicated by sparks from a locomotive on defendant's railway.   A great portion of defendant's brief is devoted to a discussion of the question whether the evidence justified the verdict. The question as to the origin of the fire was very sharply contested on the trial, the plaintiff's contention being that it was started by a spark from a locomotive of a certain freight train, which ignited the grass on the south side of the railway, while defendant's contention was that it was communicated from a burning straw-stack north of the railroad, whence it ran through a stubble field, and crossed the railroad under a bridge, and thence south.   Without attempting to state or discuss the evidence, it is enough to say that a perusal of it has satisfied us that it was sufficient to justify the jury in finding in favor of plaintiff's contention.   This raised a presumption of negligence, which it was incumbent on defendant to rebut.   Without considering the evidence bearing upon other alleged acts of negligence, we think there was enough to justify the jury in finding that defendant was negligent in using an engine of unsafe and defective construction; or, to state the proposition in another form more appropriate to the facts of the case, that ordinary and reasonable care would have required the railway company, under the circumstances, to have used another well-known and approved kind of engine, whose appli-

ances for the prevention of fires were better and safer.   The engine alleged to have started this fire was what is known as a "diamond stack."   It was in evidence that another kind of engine, known as "extension front," was then, and for at least two years had been, in general, although not universal, use on railroads thoughout the country.   In fact the defendant itself had previously substituted "extension fronts" for all its "diamond stacks" except this one.   Why they had retained this one in use does not appear.   The construction of both kinds of engines, and their respective appliances for the prevention of the escape of sparks, were explained.   The evidence as to the relative merits of the two in the matter of safety from fires came entirely from the witnesses and employes of the defendant itself, who all, with few exceptions, admitted, on cross-examination, that they considered that the "extension fronts" had a better "fire apparatus" than the "diamond stacks," and were safer in the matter of scattering fire.   There was no suggestion in the evidence that the "extension fronts" were not equally serviceable for the purposes of the company, or that it was not practicable to have used them exclusively, or that a reasonable time had not elapsed in which to complete the change.   Of course, railway companies are not bound to use every possible precaution against fire which the highest scientific skill might have suggested, or to adopt an untried appliance, or to purchase every invention which is claimed to be an improvement.   Reasonable care is all that is required.   But this must be proportionate to the risks to be apprehended and guarded against; and, in view of the great danger to property from fires communicated from passing locomotives, especially in a level prairie country, subject to frequent high winds, and much of it covered with native grasses of the most inflammable character when dry, reasonable care requires that railway companies should avail themselves of the best approved practicable appliances for the prevention of such fires.   We are therefore of opinion that, under the evidence, it was fairly a question for the jury to say whether or not it was negligent for defendant to continue the use of this engine.

2. That the value of the trees as standing trees—that is, the value they added to the farm of which they were a part—was the proper

measure of damages, and hence that it was proper to prove the value
of the farm with the trees standing on it, and then its value with the
trees destroyed, is fully settled by the decisions of this court in *Carner* v. *Chicago, St. Paul, M. & O. Ry. Co.*, 43 Minn. 375, (45 N. W.
Rep. 713,) and *Hayes* v. *Chicago, Mil. & St. Paul Ry. Co.*, 45 Minn.
17, (47 N. W. Rep. 260.)

3. A witness having testified that as an eye-witness he saw this
fire start from the straw-stack north of the railway, and run south
and cross under a railway bridge, it was clearly competent, for the
purpose of impeachment, to ask him, on cross-examination, whether
he had not stated, at a certain time and place, to certain persons, that
the fire was started by the freight-engine.

4. The only serious question in the case is that raised by the eleventh assignment of error, to wit, that the court erred in instructing
the jury that "it was the duty of the defendant to supply the engine
with *the best known and ascertained appliances* to prevent the escape
of fire. It was not its duty to make use of untried and unascertained
instrumentalities, even though subsequent experience has demonstrated the same to be more efficient; and, as to instrumentalities
then known to be more efficient, the law accords the defendant a reasonable time to make use thereof without being chargeable with negligence, and such time as was reasonably necessary, considering the
nature thereof, the changes to be effected by the use thereof, and the
danger to be avoided. And, if you find the engine referred to was
not so supplied, it is a question of fact whether, in using it in the
condition it was, the defendant was negligent." Standing by itself,
and considered as a general abstract statement of the rule, the first
sentence of this instruction might not be an accurate statement of
the law. It might be understood as requiring of railway companies
the use of appliances not yet approved by experience and use, and
not practicable. But, in view of the following parts of this instruction, and also of subsequent instructions, to the effect that the law
did not require defendant to have had and used the very best known
appliances that mechanical skill and ingenuity have been able to devise to prevent the escape of fire; that it was only bound to use reasonable and ordinary diligence and care; and that reasonable and

ordinary care is such as a careful man would observe, under like circumstances, to prevent injury to his own property,—we think the jury could hardly have been misled as to the proper rule to apply to the case, especially as the only evidence to which they could have applied the instruction complained of was that already referred to as to the superiority of "extension front" over "diamond stack" engines; and as to the fact that the former were approved by use and experience, and that their use was practicable, there was really no conflict in the evidence.

There was no error in refusing to give the requested instruction referred to in the thirteenth assignment of error, for the reason, if no other, that it was in direct conflict with the statute, which makes the fact that the fire was set by an engine *prima facie* evidence of negligence, and thus casts the burden of proof in such case upon the railway company.

Granting new trials for newly-discovered evidence is emphatically, and to a very large extent, committed to the discretion of the trial court; and the rule, subject to rare exceptions in extraordinary cases, is that newly-discovered evidence which is merely cumulative, or whose only tendency is to contradict or impeach witnesses, is not a ground for a new trial. *Lampsen* v. *Brander*, 28 Minn. 526, (11 N. W. Rep. 94;) *Peck* v. *Small*, 35 Minn. 465, (29 N.W. Rep. 69.) In this case the newly-discovered evidence, so far as not merely cumulative, is merely impeaching the evidence of some of plaintiff's witnesses, whose testimony tended to prove that the fire was set on the south side of the railway by the engine of a passing freight train. The substance of this impeaching evidence is that, after the trial, these witnesses stated to certain employes of defendant (who had also been its witnesses on the trial) and to others that their testimony was false, and that they swore falsely in order to enable plaintiff to win a case, and in consideration of his promise to divide with them what he recovered of the railway company. If it is made to appear that a verdict has been corruptly obtained by deliberate perjury, suborned by the successful party, it is the bounden duty of the court to promptly set it aside, and a refusal to do so could not be justified on the ground that the newly-discovered
v.46m.—18

evidence was merely impeaching. But, in view of the inherent improbability that witnesses for the plaintiff would, after the trial, boldly and publicly proclaim to the witnesses of the other party that they had deliberately perjured themselves for a corrupt consideration, and in view of the further fact that this was positively and most emphatically denied by the affidavits of all those who are alleged to have made these statements, and of plaintiff himself, that he never gave or promised to give any witness any reward or consideration for his testimony, the trial judge, who heard and saw all the witnesses on both sides, and had observed their manner and appearance on the stand, might well have doubted, if not entirely discredited, the truthfulness of these impeaching affidavits.

This covers all the assignments of error that are worthy of any special consideration, and the result is that the order denying a new trial is affirmed.