HOUSTON & T. C. R. CO. v. ELLIS.†

(Court of Civil Appeals of Texas. Jan. 10, 1911. On Motion for Rehearing, Feb. 2, 1911.)

1. EVIDENCE (§ 473*)—OPINION EVIDENCE—DIRECTION OF FIRE.

Where, on an issue as to whether plaintiff's barn was destroyed by fire from defendant's railway, a witness who had examined the burned area testified that he traced the burned area where the fire had traveled over the grass, and another witness testified that the way the fire had burned could be told by examining the way the straw and weeds fell, they could testify to their conclusions that from their examinations of the fire it burned with the wind from defendant's fireguards in the direction of plaintiff's barn.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2220–2223; Dec. Dig. § 473.*]

2. TRIAL (§ 191*) — FIRES—SPARKS—INSTRUCTIONS—PRIMA FACIE CASE.

The court charged that, if the sparks from defendant's engine set fire to the grass and

communicated to plaintiff's barn, such fact constituted a prima facie case of negligence on defendant's part, and, in the absence of sufficient rebutting evidence, entitled plaintiff to recover, but if the engine from which the sparks escaped was equipped with the most approved spark arrester in use, and the employés used ordinary care in operating it, the prima facie case was rebutted, and the jury should find for defendant, but, if they believed that defendant failed to equip its engine with the most approved spark arrester in use, or the employés failed to use ordinary care, the prima facie case made out by proof of sparks escaping and causing the fire was not rebutted, and they should find for plaintiff. *Held*, that such instruction was not objectionable as assuming that the fire was set out by sparks from the engine.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431; Dec. Dig. § 191.*]

3. RAILROADS (§ 485*)—FIRES—SPARK ARRESTERS—INSTRUCTION.

There being no evidence as to any spark arresters in use except the kind defendant was using on the engine in question, and there being no issue of negligence in failing to provide a spark arrester of a different model, the instruction was not erroneous as requiring defendant to equip its engine with the "most approved" spark arrester in use, instead of exercising ordinary care to do so, since under the proof a charge that defendant was required only to use ordinary care in that particular would have been a mere abstraction.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1747–1756; Dec. Dig. § 485.*]

4. TRIAL (§ 296*)—APPEAL AND ERROR (§ 1033*)—INSTRUCTION—INCONSISTENT CHARGES.

Where an instruction states an incorrect measure of duty more onerous than that authorized by the objecting party, the error is not relieved by another instruction stating the correct measure of duty unless by a special reference to the erroneous portion of the charge, such portion is withdrawn, but if the correct rule is stated, and a rule more favorable to the objecting party is afterwards given, at the objector's request, he cannot thereafter complain of the inconsistency.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 296;* Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

5. APPEAL AND ERROR (§ 1002*)—VERDICT—REVIEW.

Where there was evidence sufficient to take the case to the jury, a verdict for plaintiff on conflicting evidence will not be reversed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

On Rehearing.

6. APPEAL AND ERROR (§ 994*)—VERDICT—REVIEW.

The Court of Appeals will not set aside a verdict where the solution of the question depends on the credibility of witnesses, unless the testimony necessary to support the verdict is shown by the undisputed physical facts, or by contradictions or inconsistencies to be clearly false.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3901–3906; Dec. Dig. § 994.*]

Appeal from District Court, Waller County; Wells Thompson, Judge.

Action by W. E. Ellis against the Houston & Texas Central Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and W. B. Garrett, for appellant. R. E. Hannay and Meek & Highsmith, for appellee.

REESE, J. This is an appeal from a judgment of the district court in favor of appellee against appellant for $2,100, being the value of a certain building and contents, and standing grass, the property of appellee, destroyed by fire on the night of February 9, 1909. It is alleged that the fire was set out by sparks thrown out by a locomotive of appellant being operated on its road. There were the usual allegations by the plaintiff of defective spark arrester and negligent operation of the engine. Defendant pleaded general denial, and specially alleged that the engine was equipped with the best approved fire arresting appliance in general use, and the same was in good condition, and the engine properly operated.

We make the following conclusions of fact as supported by the evidence: On the night of February 9, 1909, a barn belonging to appellee, with the contents thereof, as set out in the petition, was entirely destroyed by fire, also certain standing grass in the pasture, also the property of appellee. The barn in question was located in the inclosed pasture of appellee, about 300 yards south from appellant's track. The pasture joined appellant's right of way. The evidence is sufficient to authorize the finding of the jury that the property destroyed was worth $2,100, the amount of the verdict. These conclusions are not disputed by appellant. While the evidence on the issues of negligence on the part of appellant in any of the particulars set out in the petition, and the communication of the fire by the engine are contested, the evidence is sufficient to support the verdict on both issues, and in deference to the verdict we find that the fire was caused by sparks from the engine communicated to the dry grass in appellee's pasture and thence to the barn, and that appellant was negligent in some one or more of the particulars set out in the petition, which negligence was the proximate cause of the fire. The issue as to whether the fire was caused by sparks from the engine was sharply contested, and upon this issue there was irreconcilable conflict in the testimony. It is not necessary to set it out here. If appellee's witnesses told the truth, the conclusion is irresistible that the fire was caused by sparks from the engine. If appellant's witnesses told the truth, the barn was on fire before the engine got to the pasture, and it was impossible for the fire to have been caused as alleged. Upon this issue appellee offered to read from the deposition of G. W. Crowder, taken by himself, the eighth direct interrogatory and the answer thereto, as fol-

lows: "Int. 8. If you stated that you observed that a portion of plaintiff's pasture had been burned, please state whether or not you made an investigation to ascertain whether said fire began in or near said pasture, and in which direction it traveled or burned after it had been set out, and please state what your investigation disclosed, and please give your reason for knowing the way the fire traveled. Locate, as near as you can, how far the fire began from the defendant's rail, and whether or not said fire began on the right of way or inside the plaintiff's pasture? [From my investigation my conclusion was the fire started from the fireguards and burned in the direction of Mr. Ellis' barn], from the fireguards or right of way of the H. & T. C. R. R. Co. on through Mr. Ellis' pasture to the barn situated there. From my recollection now, I would say that the barn is situated in a southeast direction from the place where the fire originated near the right of way or fireguards of the H. & T. C. R. R. Co. My reason for knowing the way the fire traveled from tracing the burned streak or area where the fire had traveled over the grass of the pasture, and from the direction of the wind on the night of the fire, the wind being from the north. The fire began, as near as I can now recall, about 100 feet more or less from the defendant's rail on its right of way. The fire originated inside of the plaintiff's pasture." Appellant objected to the interrogatory and answer on the ground that the interrogatory called for the opinion and conclusion of the witness, and that the answer was the conclusions of the witness upon a question not a proper subject for expert testimony, and that the witness had not qualified himself to give his conclusion. In connection with its objection appellant offered the answer of said witness to cross-interrogatory No. 8, as follows: "My testimony, as stated in answer to direct interrogatory No. 8, is the conclusion I arrived at after making an investigation of the conditions as I found them on the ground the morning after the fire." The court sustained the objection to that portion of the answer inclosed in brackets, as follows: "From my investigation, my conclusion was the fire started from the fireguards and burned in the direction of Mr. Ellis' barn"—and overruled the objection as to the remainder. Appellant duly excepted, and complains of the ruling in the first assignment of error.

The appellant moved the court to strike out the testimony of E. Roberts, witness for appellee, as follows: "I live about 500 yards from plaintiff's barn. I saw the fire the night it burned. I expect it must have been 12 o'clock that night. Did not go over to the pasture that night; did the next morning. I have seen prairie fires burning. I can tell by looking at a burn the way the fire had burned. I went over next morning and looked at the burn. My purpose in go-

ing was to see whether it got in my pasture. I walked along next to my gate and looked at it. The wind was from the north that night. If a fire is back against the wind, the straw and weeds will fall with the wind and fall to the ground, and don't burn them. If it is all burning the same direction, of course, the wind will carry the fire, and it will fall ahead and burn. I knew the condition of the grass before the fire. Next morning it showed that the weeds and grass fell south. The lower part of them was singed off and burnt. The next morning it was burned between the railroad and the barn. From the guards until it reached the barn. Yes; the next morning there was something to indicate where the barn caught. There was a place six or eight feet wide burned right up to the corner of the barn. It caught from on the corner, the northwest corner." The motion was predicated upon witness' answer to a cross-interrogatory as follows: "That was just my conclusion from what I saw. I stated it as my conclusion." This ruling is made the basis of the second assignment of error. The undisputed testimony showed that at the time the engine passed the pasture, which, with the barn, lay south of the railroad, there was a strong wind blowing from the north. It is also undisputed that the grass in the pasture was burned between the railroad and the barn. The testimony of Roberts shows, and it is not disputed, that in such cases there would be left on the ground certain signs to indicate whether such a fire burned with the wind or against it. One of these signs was described by the witness. As the grass was 18 inches to 2 feet high, this is very reasonable. Roberts testified that the signs indicating that the fire burned with the wind, and not against it, were present on the ground. These were facts, and not conclusions. His conclusion that the fire burned with the wind followed irresistibly, and added really nothing to the force of his testimony as to the facts. We think, further, that it was permissible for him to state his conclusions in connection with the facts on which it was based in such a case as is here presented.

As to the testimony of the witness Crowder, he does not state the facts upon which he bases his conclusions so fully, but it does appear that in case of a fire such as this, burning through high grass under the impulsion of a strong wind, there will be left on the ground certain signs indicating the direction the fire traveled, whether with or against the wind. Roberts having testified as to some of them, and that they existed on the ground and induced his conclusion, it is a fair inference that these indications operated, in whole or in part, to induce Crowder's conclusions. It might be impossible to put the jury entirely in possession of the general appearance of things on the ground and all of the probably minute circumstances

from which a witness would conclude that the fire burned with the wind, and in such case we are inclined to think it would not be improper to allow the jury to have the benefit of the conclusion arrived at by the witness. If such conclusions were the result of insufficient data to support them, or otherwise weak or unreliable, that might be shown by cross-examination, whereby the witness might be required to state fully the grounds of his conclusions. A very learned and scientific discussion of the admissibility of the conclusions of witnesses, or, as it is called, "opinion evidence," is found in Professor Wigmore's great work on Evidence. 3 Wigmore, Evidence, § 1919, bottom of page 2552 et seq. From section 1928 we quote: "But if we are dealing with the other sort of witness—the one not claiming greater skill, but simply drawing inferences from his own observations which any one in his place could draw—the answer may be different. The answer here virtually depends on our attitude, whether of favor or disfavor, toward the principle involved. If we believe that the drawing of inferences by an observer of the data is a hateful, dangerous, and reprehensible thing, if we prefer to put obstacles of technical and not real force in the way of the most common sort of testimony, if we believe that this modern and minor rule about opinion is a fundamental canon in the investigation of truth, if we are opposed to Baron Parke's wish to employ 'a compendious mode of ascertaining the result of the actual observation of the witness,' then, of course, we shall look upon every witness as a possible 'usurper' of the jury's functions. We shall watch each phase of his testimony anxiously, and stop his mouth as soon as he approaches the insidious heresy of an 'opinion' or inference. On the other hand, if we believe that the rule in question, as applied to the unskilled witness who has personally observed the data, is a mere minor rule of convenience not in any way concerned with the value of the testimony, if we hold that it is inconsistent to aim in theory at convenience and simplicity by a rule which in thorough application causes ten times the inconvenience and complication which in theory it was to avoid, if we prefer to make the rules of evidence our tools rather than to become ourselves their helpless slaves, then we shall conclude to adopt the first form of the test as above; that is, that we shall allow the witness to state freely all the results which he is qualified to reach, and only now and then, when he comes to matters as to which it is instantly clear that the jurors are or can be as fully equipped with the data, we shall exclude his inferences." The text is enriched by liberal quotations from decided cases from which a few are selected. "Gibson, J., in Cornell v. Green, 10 Serg. & R. (Pa.) 16: 'I take it that whenever the facts from which a witness received an impression are too evanescent in their nature to

be recollected, or are too complicated to be separated and distinctly narrated, his impressions from these facts become evidence.' * * * Johnson, J., in Clark v. Baird, 9 N. Y. 185: 'Evidence of opinion is also recognized as proper, on the same ground of necessity, in cases where language is not adapted to convey those circumstances on which the judgment must be formed.' * * * Campbell, J., in Evans v. People, 12 Mich. 35: 'Many cases exist in which it is impossible by any description, however graphic, to explain things so as to enable any one but the witness himself to see or comprehend them as they would have been seen or comprehended could the jury have occupied his position of observation.' * * * Endicott, J., in Commonwealth v. Sturtivant, 117 Mass. 122 [19 Am. Rep. 401]: '(The condition is that) the subject-matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time.' * * * Peck, J., in Bates v. Sharon, 45 Vt. 481: '(Opinion is admitted) where the facts are of such a character as to be incapable of being presented with their proper force to any one but the observer himself, so as to enable the triers to draw a correct or intelligent conclusion from them without the aid of the judgment or opinion of the witness who has had the benefit of personal observation.' " The text proceeds: "It is in the application of this test that the opinion rule really breaks down as an aid in the investigation of truth. In the vast majority of rulings of exclusion, the data observed by the witness could not in any liberal and accurate view be really reproduced to the jury by the witness' words and gestures. The error of the judges consists in giving too much credit to the possibility of such reproduction. What is chiefly wrong is by no means the test itself, but the illiberal and quibbling application of it." There can be no question that such evidence is logically relevant, and would be regarded as of value by any one seeking to discover the absolute truth of the matter. The objection that by its admission the witness usurps the functions of the jury is unsound. We think the court did not err in admitting the testimony, and the assignments of error are overruled.

The court charged the jury as follows: "If the jury believes from the evidence that sparks of fire escaped from defendant's engine on the 9th of February, 1909, as it was passing along the defendant's road, near the plaintiff's pasture, and set fire to the grass growing therein, and that said fire was communicated to the plaintiff's barn, and which destroyed said barn, and all of its contents, as alleged by plaintiff, and all of the other property described, then such facts constitute a prima facie case of negligence on the part of the defendant, and, in the absence of rebutting evidence sufficient to overcome such prima facie case of negligence, will render

the defendant liable for the injuries occasioned thereby, and you should find a verdict for the plaintiff. If from the evidence the jury should believe that sparks of fire escaped from the defendant's engine, and set the fire which caused the plaintiff damage, but if, from the evidence you believe that the engine from which the sparks escaped was equipped with the most improved spark arrester in use, and that the agents and employés of the defendant in charge of said engine used ordinary care in operating said engine to prevent the escape of sparks, then the jury are charged that the prima facie case made out by proof of the escape of sparks and fire resulting therefrom is rebutted, and, if the jury so believes, they will find for the defendant. But, if from all the evidence they believe that the defendant failed to equip its engine, from which the sparks escaped that caused the fire, with the most approved spark arrester in use, or that the agents and employés of the defendant engaged in operating said engine failed to use ordinary care to prevent the escape of sparks, then the jury is charged that the prima facie case made out by proof of sparks escaping and causing the fire has not been rebutted, and they should find for the plaintiff as charged above." By the third assignment of error it is objected to this charge that it assumes that the fire was set out by sparks from the engine. The objection is without merit. The entire charge must be read together, from which it is clear that this issue was submitted to the jury, and they could not have understood otherwise. The issue was also directly and emphatically submitted in a charge requested by appellant. The further objection is made to this charge that it required appellant, in order to rebut the prima facie case made by the appellee, to show that the engine was equipped with the most approved spark arrester in use, whereas under the settled rule in this state the defendant was only required to show that it had exercised ordinary care to do so. Appellant is correct as to the rule in this state in the particular referred to, and it would be proper to so charge the jury where the facts presented the issue of ordinary care. The question is very fully discussed by the Supreme Court in the case of M., K. & T. Ry. Co. v. Carter, 95 Tex. 461, 68 S. W. 159, which is the latest expression of that court upon the question so far as we have been able to find. In that case the court charged that "it was the duty of appellant to equip its engine with the best spark arrester in use, and a failure to do so would render it liable for the consequences if the fire was shown to be due to such failure on its part." In answer to a certified question as to whether this charge was error under the evidence as stated, the Supreme Court answered that the trial court committed error "under the facts of this case" in failing to instruct the jury that it was the duty of the railway company to use ordinary

care to provide its engine with the best approved device for the prevention of the escape of sparks. The court then proceeds to state the grounds of such ruling as follows: "The testimony in this case tended to prove that each of two different kinds of spark arresters was used by railroad companies and each was considered by experienced railroad men as better than the other, which produced a condition in which it was necessary for the railroad company to make a choice between the two. Under this state of facts, it was the duty of the railroad company to exercise ordinary care—that is, such care as a man of ordinary prudence would exercise under like circumstances to select and use the better of the two—but, having used such care as the law requires, it cannot be held that a failure of judgment honestly exercised in an attempt to discharge the duty should render the company liable. Turnpike Co. v. Railway, 54 Pa. 350 [93 Am. Dec. 708]; Jackson v. Railway, 31 Iowa, 178 [7 Am. Rep. 120]; Hoye v. Railway, 46 Minn. 269 [48 N. W. 1117]; Railway v. Corn, 71 Ill. 496; M. R. Sash and D. Co. v. Railway, 91 Wis. 463 [65 N. W. 176]." In the case of Turnpike Co. v. Railway, above cited, from which the court quotes, the facts were of a similar nature. There was a question raised by the evidence as to which of the several spark arresters was the best, and as to whether the railroad company had exercised ordinary care in its selection from among these of the spark arresters with which its engine was equipped. The Supreme Court in the Carter Case says: "In passing upon this question, courts have usually expressed the rule without the qualification, because the facts in the case did not demand it. The standard established is that the railroad company must select the best devices in use for the purpose of arresting sparks and preventing the escape of fire from the locomotive, and it is said that a man of ordinary prudence will do so. Jackson v. Railway, 31 Iowa, 178 [7 Am. Rep. 120]. But this does not prescribe the form of the charge to be given, which must conform to the facts of each case."

In the present case there was no evidence as to any spark arrester in use except the one which, according to the testimony of the only witness testifying upon the point, was in use by appellant on the engine in question. There was nothing in the evidence that presented the issue of ordinary care vel non in this particular, or that could have assisted the jury in any way to determine such issue. The evidence was that the engine was equipped with a certain kind of spark arrester. and that this was the best known, and that was all. A charge that appellant was required to use ordinary care in this particular would have been a pure abstraction. We conclude that the objection to the charge referred to should not be sustained.

At the request of appellant, the court

charged the jury that in providing the engine with spark arresters and keeping the same in repair and in operating the same appellant was required to use ordinary care, and, if it had done so, appellee could not recover, even if the fire was started by sparks from the engine, and it is further objected to the charge of the court referred to that the rule there laid down was inconsistent with that stated in the requested charge, and the two together were calculated to mislead the jury, citing Baker v. Ashe, 80 Tex. 357, 16 S. W. 36; Gonzales v. Adoue, 94 Tex. 120, 58 S. W. 951, and other cases. If the charge of the court stated an incorrect measure of duty and more onerous than authorized on the part of appellant, the error would not have been relieved by stating the correct measure in the same charge or in a requested charge given, unless by special reference to the erroneous portion of the charge the same was withdrawn. This is the rule to be deduced from the cases cited, and other cases on the point, but where, as in this case, the correct rule is stated in the court's charge and a rule more favorable to appellant is stated in a charge given at his request, he cannot complain of the inconsistency. If the jury adopted the correct rule laid down in the court's charge as the basis of the verdict, there is no error. If, on the contrary, they apply the more favorable rule requested by appellant, he cannot complain. It is to be noted that in another charge requested by appellant and given by the court the same rule as to the measure of appellant's duty is stated as that made the basis of the principal objection in the court's general charge. The third assignment of error with the several propositions thereunder is overruled.

By the remaining assignments of error and the propositions thereunder appellant complains of the verdict on the grounds that the overwhelming weight and preponderance of the evidence shows that the fire which consumed appellee's property was not caused by sparks from the engine, and that the undisputed evidence showed that the engine was equipped with the most approved spark arrester in use, was in good repair, and carefully operated. As we have stated in our findings of fact, the evidence as to the origin of the fire was sharply conflicting. The testimony of appellee's witnesses, several in number, was amply sufficient to show that the fire originated from sparks from the engine. The testimony of the trainmen was directly to the contrary. We cannot say that the verdict was unauthorized, or is against the preponderance of the evidence. Certainly it does not present such a case as would authorize us to set it aside. It is true that the only witnesses testifying directly upon the point, employés of appellant, testified that the spark arrester upon the engine was the best in use, that it was in good repair, and that the engine was carefully handled, but this was not sufficient to take the case from the jury. Appellee offered the only evidence in his power of negligence in such particulars; that is, that the fire was caused by the escape of sparks from the engine. From the necessities of the case the rule has been adopted that this makes a prima facie case of negligence. The credibility of the witnesses whose testimony was relied on to rebut this was for the jury. There was evidence introduced showing that this engine on that night was emitting sparks in an unusual manner, and that thereby fire was started in several places in the neighborhood of the fire. The evidence was sufficient to take the case to the jury and to authorize their finding. Ross v. Railway Co., 47 Tex. Civ. App. 24, 103 S. W. 708, and cases cited.

We find no error in the record requiring a reversal, and the judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

In a motion for rehearing, our attention is called to a statement in the opinion that the pasture of appellee joined the right of way of the railroad. The evidence shows, and we find, that in fact a public road 60 feet wide ran between the right of way fence and the pasture fence. Whether this right of way fence is on the line of the right of way does not appear. At any rate, we make the requested correction in our findings. We do not regard this as material, as it does not affect the testimony of appellee's witnesses, which the jury found to be true, that the fire caught inside the pasture from sparks from the engine.

In the motion for rehearing appellant insists with great earnestness and very evident sincerity that we have erred in adopting the conclusions of the jury that the fire was started by sparks from the engine. We do not understand that it is contended that the testimony of appellee's witnesses is not sufficient to support this conclusion, but that the testimony of appellant's witnesses is clear and positive to the contrary, as is shown in the opinion, and that the testimony of appellee's witnesses is shown, not only by this testimony of appellant's witnesses, but by inconsistencies and contradictions in their own statements, to be false. We have again examined all the testimony with great care, and must adhere to our original conclusion. This appears to us to be a case where the jury had to judge whether they would believe the one or the other set of witnesses; in other words, a case involving the credibility of the witnesses, and the weight to be attached to their testimony. While this court has not and will not shirk the responsibility of setting aside a verdict of a jury, where the evidence so preponderates against it as to show it to be clearly wrong, no appellate court under our system of procedure can properly do this where the solution of

the question depends upon the credibility of the witnesses, unless perhaps in a case where the testimony of witnesses necessary to support the verdict is shown by the undisputed physical facts, or by contradictions or inconsistencies in such testimony to be clearly false. To do so would be simply to invade the province of the jury in a matter specially committed to them by the plain terms of the law. This matter is, we think, wisely committed to the jury, subject, of course, to the control of the trial court in the first instance, and in a proper case of the appellate tribunal. This case does not arise where some of the witnesses are clearly shown to have testified falsely, where such false testimony is not essential to support the verdict. If in eliminating all such testimony thus discredited, there is left enough evidence to support the verdict this case does not arise.

It is not improper that we should say that, upon investigation of the authorities upon the question of the admissibility of the testimony of the witnesses Crowder and Roberts, we were in very great doubt as to its admissibility. We concluded to follow the more modern rule, which we believe to be more in accordance with reason and common sense, and to approve the ruling of the trial court. As to our conclusion with regard to the charge so much criticized by counsel for appellant, we are content to adhere to our original conclusion, resting upon what we consider the holding in the Carter Case cited in the opinion.

These questions have been pressed upon us with great vigor and earnestness in the motion for rehearing, which is not only excusable, but commendable, in view of what counsel evidently considers many and vital errors in our conclusions. If injustice has been done appellant by the verdict in this case, which is, of course, possible, it is not such as an appellate court can correct without going entirely beyond its proper function.

The motion for a new trial is overruled.