SAVANNAH, FLORIDA & WESTERN RY. CO. *v.* DANIELS.

1. A request to charge which is fully covered in the general charge need not be given.
2. Where a railroad drawbridge over a navigable river is approached on one side by a very long trestle, and where the rules of the company and a statute, conceded by counsel to be applicable, require trains to "slow down to a speed of not more than four miles an hour before running on or crossing any drawbridge," the restriction as to speed applies to the bridge proper and not to the trestle or approach thereto. This is matter of construction for the court, and not a question of fact for the jury. If the speed of the train is so regulated that it will not be more than four miles an hour when it runs on the drawbridge, there is no violation of the rule or the statute in approaching the bridge.
   November 25, 1892.

Railroad. Drawbridge. Negligence. Before Judge MacDonell. City court of Savannah. July term, 1892.

Erwin, duBignon & Chisholm, for plaintiff in error.
R. R. Richards and W. R. Leaken, *contra.*

Simmons, Justice.

The plaintiff sued the railroad company for damages on account of the death of her son, which she claimed was caused by the negligence of the defendant while he was upon its bridge over the Ogeechee river, where he had a right to be. It was alleged that the defendant was negligent in not slowing down its train to a speed of not more than four miles an hour at the time; that the train should have been stopped before going on the bridge, unless signalled to proceed by the bridge-tender or his substitute; but that without either slowing up or stopping, it ran over and across the drawbridge so negligently, recklessly and carelessly as to kill her son. The verdict was in favor of the plaintiff, for $2,000, and the defendant made a motion for a new trial, which was overruled, and it excepted.

A statute, conceded to be applicable in the present case, prescribes that "every train of passenger-cars

drawn by one or more locomotives . . shall slow down to a speed of not more than four miles an hour before running on or crossing any drawbridge over a stream which is regularly navigated by vessels." (Acts 1880–1, p. 165; Code, §1689p.) A rule of the defendant is in the language of the statute. It is complained that the court erred in refusing to give the following charge to the jury, as requested in writing:

"The rule of the company and the statute of the State which has been put in evidence by the plaintiff, and which requires trains to be run at a speed of not more than four miles an hour across drawbridges, is applicable only to the drawbridge itself, and does not apply to the trestling or approaches to the drawbridge; for if the engineer has his train sufficiently under control to go over the drawbridge at a speed of not more than four miles an hour, then the law and the rule of the company is complied with, no matter at what rate of speed he may have approached the bridge."

The following instructions are complained of:

"As to what constitutes a drawbridge, I leave that for the jury to say. There have been contentions on both sides as to what constitutes a drawbridge. The defendant contends that the part which turns on the pivot— that directly over the channel—and which opens, constitutes the drawbridge; while the plaintiff contends that not only that part, but also the trestle and every part across the river constitutes the drawbridge. I think that is a question of fact for the jury to determine."

We think the court erred in leaving this question to the jury. As a rule, questions in regard to the interpretation and construction of statutes are for the court alone; and there is no reason for treating as an exception to the rule the question of what constitutes a "drawbridge" within the meaning of this statute. "Whether a structure is or is not a bridge, may some-
v 90-39

times be a question of fact. The structure may be of such a peculiar construction, or so peculiarly located in the particular case, as to require its character to be determined by the jury under the facts of the particular instance. So it must sometimes be that what are parts of a bridge is a question to be determined as one of fact and not of law. Generally, however, the question of what is or is not a bridge is for the court and not the jury," Elliott on Roads and Streets, 25. Here the question is whether in all cases to which the statute is applicable, the term "drawbridge," as used in the statute, includes the whole of the bridge structure or only a certain part of it; that is to say, whether it includes in all cases the trestles and approaches from the embankments beyond the river, as well as the bridge proper, or is confined to the bridge proper or the "draw," a question which, it will be seen, is of a different character from that presented in the cases above referred to. That the term "drawbridge," as stated in the opinion of the learned judge of the court below, may have, in addition to its general and ordinary meaning, a special and technical signification, we do not think should control as a reason for leaving the construction of the statute to the jury. The importance of treating the question as one of law is manifest when it is considered that the object of the statute is to regulate the daily conduct of railroad companies in a matter of considerable risk to the safety of life and property. The opinion of the court is supposed to be consistent in the construction of laws, and the interpretation adopted by the trial judge is subject to review by a court of last resort, whose construction is controlling in all similar cases, but the opinions of juries may vary and there may be different verdicts on exactly the same state of facts. It is highly important, to the public in general as well as to the railroad companies, that the

duty imposed by this statute should be clearly defined and understood; but if the jury in each case could construe the law for itself, there would be no means of arriving at a construction which could be regarded as final, and the limits of the duty imposed must remain unsettled.

Treating the question, then, as one of law, we think the term "drawbridge," as used in the statute, should be construed to mean the bridge proper—that is to say, that part of the structure which is directly over the river—and as not including the trestles or approaches on either side of the river. Although the term "drawbridge" is often applied to the movable section of a bridge, it means also the whole bridge of which the "draw" or movable section forms a part. The Century Dictionary defines the term as meaning "a bridge one or more sections of which can be lifted or moved aside to permit the passage of boats"; and the definition in Webster's Dictionary accords with this. We think the latter signification is the one which should be adopted in construing this statute. In arriving at the sense in which the term is here used, the object of the enactment ought to control, which is to reduce the speed before the movable part of the bridge is reached, so that a stop would be easy in case the "draw" should not be properly adjusted for the train to run over it. Of course if the train were running at the rate of four miles an hour on reaching the "draw," it could not be stopped in time. The danger could be obviated, however, if the speed were brought within this limit upon reaching the bridge proper; for then the persons operating the train could easily see the condition of the "draw" in time to stop the train before reaching it. But to accomplish the object of the statute, there would be no occasion before reaching the bridge proper to reduce the speed to the limit stated. We think the court

should have instructed the jury as requested by counsel for the defendant, that the restriction to four miles an hour does not apply to the trestling or approaches to the drawbridge, and that if the engineer has his train sufficiently under control to go over the drawbridge at a speed of not more than four miles an hour, the law and the rule of the company are complied with. In the present case there was a long trestle extending across a marsh, over which the train had to pass before the river or the bridge proper was reached. If the jury applied the statute to this trestle, over which the evidence shows that the train was running more than four miles an hour, this would result in fixing negligence upon the defendant without regard to whether the speed was reduced to the prescribed limit before reaching the bridge proper or not, and without regard to whether all ordinary care and diligence was used on the part of the defendant to avoid running into the deceased when it was discovered that he was on the track. There was evidence from which the jury could find that in this respect proper diligence was exercised; but if the rate of speed was in violation of the statute while running on the trestle or approach to the bridge proper, as the jury may have found it was, the absence of fault in other respects might not avail to relieve the defendant from liability, an unlawful rate of speed being negligence *per se.* We cannot say, therefore, that the failure of the court to charge properly on this subject did not result in harm to the defendant, and the case being an exceedingly close one under the evidence, we think the error was such as to call for a new trial.

*Judgment reversed.*