THE CITY COUNCIL OF AUGUSTA *v.* HUDSON.

| 94 | 135 |
| 126 | 701 |

1. If there was any error in admitting in evidence the map of Hamburg, S. C., it was not cause for a new trial.
2. According to the decision in this case when before this court the first time (88 *Ga.* 599), it was not incumbent on the plaintiff, in order to establish liability on the part of the defendant, to prove "that under the statutes of South Carolina the city is liable civilly for a failure to keep the bridge in repair."
3. The approaches to a toll-bridge and its abutments, as well as the bridge proper, must be kept in repair by the owner, the whole having been erected by him, and, so far as appears, no duty resting upon the public to maintain the approaches or abutments as a part of the highway. The defect complained of having existed for a considerable period of time, no question could properly arise as to the duty of the owner to take notice of it.
4. An allegation that railing was absent from the abutment of the bridge, may be supported by proof that it was absent from the approach to the bridge.
5. Where a mule, which was being driven to a wagon over a toll-bridge owned and kept by a city, became frightened by a train on a railroad near by, ran away, and, because of the absence of a guard-rail from the approach to or abutment of the bridge, was precipitated from the structure down a high embankment, the absence of the guard-rail was a sufficiently proximate cause of the catastrophe to render the city liable for injuries to person and property thereby occasioned, if such absence was due to the city's negligence.
6. The judge of the superior court has no legal power to receive or hear affidavits of jurors to impeach their verdict.
7. There was nothing in the charges or refusals to charge in relation to the credibility of witnesses, or to the measure of damages, which requires a new trial; there was no error in refusing to grant a non-

suit; the evidence warranted the verdict, and there was no error in denying a new trial.

July 16, 1894.

Action for damages. Before Judge Roney. Richmond superior court. October term, 1893.

William T. Davidson, for plaintiff in error.

Boykin Wright, Hamilton Phinizy and E. T. Williams, *contra*.

Lumpkin, Justice.

The first trial of this case resulted in a verdict for the defendant. The court below granted a new trial, and its judgment was affirmed. 88 *Ga.* 599. At the second trial there was a verdict for the plaintiff; the defendant's motion for a new trial, containing twenty-four grounds, was overruled, and it excepted and brought the case here for review. It is unnecessary to deal with the grounds of the motion *seriatim*. In quite a number of them, no new or important legal question is presented; and in disposing of the others, they may be treated in groups.

1. Complaint was made that the court erred in admitting in evidence a map of the town of Hamburg, South Carolina, the ground of objection being that the map had not been properly authenticated or proved as required by law. Whether the map ought to have been received or not, certainly admitting it was no cause for a new trial. Indeed, if the town of Hamburg itself had been put in evidence before the jury (provided such a thing were possible), it would hardly have had an appreciable effect upon the deliberations of the jury. Seriously, there is no profit whatever in bringing to this court so trivial a question as that now presented.

2. When this case was here before, we decided that the City Council of Augusta, as the owner and keeper of a toll-bridge over the Savannah river, was liable for

negligence in failing to keep the abutment resting upon
the South Carolina shore in safe condition for use by
customers, and that this liability existed even though it
might be the law of South Carolina that a municipal cor-
poration of that State would not be liable for like negli-
gence touching a similar bridge owned by it. We thought
this portion of the law of the case was thus definitely
settled. We were quite serious in laying down what we
understood to be the law applicable, and we now adhere
to our former conclusion. Consequently, we say, em-
phatically, the court did not err in refusing to charge
that the defendant was not liable unless the plaintiff
proved that " under the statutes of South Carolina, the
city is liable civilly for a failure to keep the bridge in
repair."

3. The evidence shows that the entire bridge structure,
including the approaches and abutment on the South
Carolina side, had been erected by the City Council of
Augusta, and there is not in the record the faintest sug-
gestion that any duty rested upon the public to main-
tain either the approaches or the abutments as a part of
the highway. The City Council of Augusta being liable
as any other proprietor of a toll-bridge over which the
public are invited to cross, they paying for the privilege,
while not an insurer of the persons or property of its
customers, was bound at least to ordinary care respect-
ing the safety of its bridge. 1 Thomp. Negl. p. 317,
§11. The duty of keeping the bridge in repair included
the duty of repairing its approaches and abutments, and
carried with it a corresponding liability for damages
for non-repair, and also liability for injuries happening
in consequence of the bridge being without suitable rail-
ings, or having railings defective or out of repair. *Ibid.*
p. 563–564, §§8 and 9, and cases cited. See, also, 2 Thomp.
Negl. p. 770, and cases there cited. The defect com-
plained of in this particular case having existed for

some time, no question could properly arise as to the duty of the city council to take notice of it and have it repaired. Certainly, there was ample time for the municipal authorities to have discovered that the railing was missing, and to have had it replaced before the time when the plaintiff was injured.

4. The approaches and abutments of the bridge all constituting, as above stated, parts of one and the same structure, an allegation that railing was absent from the abutment was supported by evidence showing that it was absent from the approach to the bridge. The question now under consideration, with reference to the facts of the case before us, is by no means the same as that presented in *S., F. & W. Ry. Co. v. Daniels*, 90 *Ga.* 608. There, having reference to the rules of the company and the statute requiring trains to slow down to a certain speed before running on or crossing any drawbridge, it was held that the restriction as to speed applied to the bridge proper, and not to a long trestle constituting an approach thereto; the obvious purpose of the rules and of the statute being to prevent the precipitation of trains into the river when the "draw" of the bridge was turned around for the passage of boats.

5. Under the facts summarized in the fifth head-note, we think the absence of the guard-rail was a sufficiently proximate cause of the catastrophe to render the city liable to the plaintiff for injuries to his person and property. If all animals driven to vehicles were perfectly safe and gentle under all circumstances, guard-rails upon bridges might, so far as the use of such animals is concerned, be dispensed with; but we apprehend that guard-rails are designed mainly to prevent just such calamities as that which happened in the present case, because of a horse or mule being frightened, or becoming unruly or refractory for any reason. Doubtless the plaintiff's mule was frightened by the passing train

on the railroad near by; but notwithstanding this fright, the plaintiff, in all probability, would have been enabled to leave the bridge in safety if a strong and sufficient guard-rail had been in its proper place to prevent the animal from running off the abutment. The recent case of Brown v. Laurens, 38 S. Car. 282, is not in harmony with the views entertained by this court. See *Ga. R. R. & Banking Co.* v. *Mayo*, 92 *Ga.* 223, which holds exactly to the contrary of the South Carolina court, as to negligence in failing to provide a bridge railing. The case of *City of Atlanta* v. *Wilson*, 59 *Ga.* 544, is also somewhat in point as to the principle involved, and there are other Georgia cases to the same effect. We have no hesitation in following the doctrine announced in our cases as the true law of the question at issue.

6. One of the grounds of the motion for a new trial relates to improper conduct on the part of some of the jurors in acting upon information not derived from the evidence. This ground was supported by no proof except the affidavit of one of the jurors. This court has so often and distinctly ruled that the affidavit of a juror will not be received to impeach his verdict, it is unnecessary at this time to say anything more on the subject, except to remark most emphatically that a judge of the superior court has no legal power to receive or consider such an affidavit for such a purpose.

7. Complaint was made in numerous grounds as to certain charges and refusals to charge in relation to the credibility of witnesses, and as to the measure of damages. We find no error in any of these grounds for which a new trial should be granted, and nothing requiring elaboration at our hands. The refusal of a nonsuit was proper; the amount of the verdict was reasonable, and the evidence warranted a finding in the plaintiff's favor. On the whole, we are quite content to allow the judgment of the court below to stand.

*Judgment affirmed.*