EMMA J. STOUT, Administratrix of W. A. Stout, v. VALLE CRUCIS, SHAWNEEHAW & ELK PARK TURNPIKE COMPANY.

(Filed 30 November, 1910.)

1. Causeway—Public Turnpike—Bridges—Handrail—Negligence.

The defendant had built up on its public turnpike road across a hollow or gulch between two ridges a straight causeway forty feet long constructed of logs, rocks and earth, with stringers on either side to prevent wagons from running off of it. At the highest part the causeway was thirteen and one-half feet high, and sloped out to a grade on either end. In an action for damages, for the death of plaintiff's intestate, caused by his inad-

153—33

vertently riding off the bridge on a dark night, *held*, the failure of the defendant to provide handrails on the sides of the causeway was negligence *per se*.

**2. Same—Proximate Cause.**

In this case it appearing that the defendant had negligently failed to provide handrails for its causeway over a hollow or gulch on its public roadway, and that plaintiff's intestate was killed on a dark night by the horse he was riding going over its side, the question of the proximate cause of his death should be submitted to the jury under evidence tending to show that there was an electrical storm raging, and at the time of the occurrence the horse was frightened by lightning to such an extent that a handrail would not in all probability have been sufficient to avoid the fatality.

APPEAL from *Webb, J.,* at the Spring Term, 1910, of WA-TAUGA.

Civil action to recover for the negligent killing of plaintiff's intestate.

These issues were submitted:

1. Was the death of plaintiff's intestate caused by the negligence of the defendant? Answer: Yes.

2. What damage is plaintiff entitled to recover by reason of such negligence? Answer: $4,000.

The court rendered judgment for plaintiff and defendant appealed.

The facts are stated fully in the opinion of *Mr. Justice Brown.*

*T. A. Love* and *F. A. Linney* for plaintiff.
*Edmund Jones* and *L. D. Lowe* for defendant.

BROWN, J. The defendant is a resident corporation created under the laws of the State of North Carolina (Private Laws of 1891, chapter 291), and was operating a turnpike road with toll gates over the road and collecting tolls from the patrons of said road between the towns of Valle Crucis, in the county of Watauga, and Elk Park, in the county of Mitchell.

It appears that at the point on defendant's road where the plaintiff's intestate was injured the roadbed was a solid causeway built up across a hollow or gulch between two ridges, and

that such causeway was constructed of logs, rocks and earth. That it was straight and without any curvature and about forty or forty-five feet in length. That at the highest part it was 13½ feet high and sloped out to grade at either end. That the road was smooth and in good condition and was of the width required for such roads by the law in force, and that it had on either side stringers about ten inches in diameter to prevent wagons from running off of the causeway, but that there were no handrails along the causeway, nor had ever been; and that the road was in all respects as it had been for many years. That the night of the injury to plaintiff's intestate was intensely dark, and that a wild tempest of thunder, lightning and rain was prevailing at the time of the accident. That plaintiff's intestate was riding a horse over said causeway about twelve o'clock at night, and that the injury was caused by the horse going over the edge of the road with the intestate on him.

1. The first question presented by the assignments of error relates to the duty of the defendant to construct and maintain handrails along both sides of this causeway of proper height and strength for the protection of its patrons passing over it.

We are of opinion that the character of this particular structure is such that it is negligence not to maintain handrails along both sides of it. The guard logs on each side placed there to prevent vehicles running off do not meet the requirements of a reasonable prudence. The structure is really a bridge across a gully forty feet in width.

In fact the witnesses speak of it as a bridge. It is as dangerous in every respect without handrails as if it were built on piling and crossed a running stream.

We could not hesitate to hold it to be *per se* negligence to fail to provide railing on both sides of an open bridge of that length across an ordinary stream. In the case of *Titus v. New Scotland,* 11 N. Y., 226, the plaintiff's intestate was driving over a narrower bridge on a very dark night, so dark in fact that he could not see his way and had to trust to the instinct of his horses to follow a beaten trail. In that case the bridge was ten or twelve feet in width and the planks constituting the floor of the bridge were of unequal lengths and there were no guard rails

or banistering on either side of said bridge; the teamster drove off said bridge and was killed; the Supreme Court sustained a verdict and judgment in favor of the plaintiff, holding the negligent failure to provide safe guard rails or banistering was the proximate cause of the injury. One traveling at night has the same rights as one traveling by day to assume that the highway is safe. 15 Am. & Eng. Encyc., 472, subsection F, and authorities cited thereunder.

*Quinn v. Semproilus,* 33 N. Y., is very similar to the case at bar, the imputed negligence consisting of the failure of the defendant to construct handrails over a long bridge, whereby the plaintiff's team was precipitated and injured, the Court held a good cause of action was alleged and the plaintiff was entitled to recover such damage sustained. *Augusta v. Hudson,* 94 Ga., 135; *Atlanta v. Wilson,* 59 Ga., 544; *Georgia R. R. Co. v. Mayo,* 92 Ga., 223.

We do not think there is anything in defendant's charter or in sec. 14, Acts 1899, chap. 286, which relieves the defendant from the duty of placing hand or guard rails on what is practically a bridge forty feet long.

2. We think, however, the trial judge erred in determining as matter of law that the absence of handrails was the proximate cause of the injury. Under ordinary circumstances where man or beast falls off a bridge for lack of proper guard rails the failure to provide them would be adjudged as matter of law the proximate cause of the injury, but in this case there are exceptional circumstances which require that question to be determined by a jury.

It appears in the evidence that the deceased was riding the horse of witness McGuire, who was walking four or five feet ahead; that there was at the time a very violent thunder storm raging and that just at time the horse and rider disappeared there was a terrific peal of thunder accompanied by lightning.

It is contended by the defendant with much force that if there had been a handrail along the side of the bridge or causeway, it would not in all probability have saved the intestate; that the horse was crazed by fright and would have jumped the handrail or easily have broken it down when he rushed against it.

This is a reasonable inference which a jury would be warranted in drawing from the evidence and cannot be ignored. If the horse, badly frightened by the thunder and lightning, rushed off the bridge under circumstances when no ordinary guard rail would in all probability have prevented the catastrophe, the death of the intestate would be attributed to causes for which defendant was not responsible and not to the absence of the guard rail.

In other words under such circumstances the failure to provide a guard rail would not be the proximate cause of the intestate's death and plaintiff could not recover.

This contention of the defendant should have been presented to the jury with appropriate instructions.

New trial.