CHRISTENA A. GILBERT and Another v. DULUTH GENERAL ELECTRIC COMPANY.[1]

July 22, 1904.

Nos. 13,961—(197).

**Death Caused by Electricity.**

The evidence supports the claim that plaintiff's intestate came to his death from a shock of electricity received as the result of the crossing of a primary and secondary wire installed by defendant. It appears the former carried twenty-two hundred voltage of electricity, and the latter connected with the electric fixtures at the residence of deceased.

**Evidence of Negligence.**

Evidence to the effect that such wires were strung on the same cross-arm, sixteen inches apart, upon poles one hundred feet distant from each

[1] Reported in 100 N. W. 653.

other, that they had been crossed two weeks before, and again found to be crossed a few hours after the accident, coupled with evidence tending to show that such wires were permitted to sag four feet between poles, and that the insulating material was worn off at the point of contact, taken in connection with other evidence introduced, is sufficient to support a verdict in an issue charging defendant with negligence in the construction and maintenance of its wires.

**Reasonable Care.**

Electric companies are bound to use reasonable care in the construction and maintenance of their lines and apparatus. This care varies with the risks to be apprehended from negligence. Where the wires carry strong and dangerous currents of electricity, and the result of negligence may be exposure to death or serious accident, a high degree of care is required. Under such circumstances "reasonable care" and a high "degree of diligence" may be deemed to be synonymous.

**Dwelling House.**

Parties installing electric light fixtures in houses are not bound to anticipate that electric light companies furnishing electricity to the public will be negligent in either the construction or maintenance of their respective systems connecting therewith, and the installation of a defective electric socket by plaintiff's intestate at his place of residence did not constitute such negligence as will preclude a recovery herein.

**Opinion Evidence.**

Opinions of physicians, based upon facts assumed in a certain hypothetical question, *held* admissible. Other errors assigned do not constitute reversible error.

Action in the district court for St. Louis county by plaintiffs, as administrators of the estate of Samuel V. Gilbert, deceased, to recover $5,000 for the death of deceased. The case was tried before Cant, J., and a jury, which rendered a verdict in favor of plaintiffs for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Francis W. Sullivan,* for appellant.

*Davis & Hollister,* for respondents.

DOUGLAS, J.

Appeal from an order of the district court denying the motion of defendant to set aside the verdict of the jury and to direct judgment in favor of defendant, as well as for a new trial.

This action was brought by the administratrix and administrator of the estate of Samuel V. Gilbert, deceased, to recover damages arising from the alleged negligence of appellant resulting in the death of said Gilbert. At three o'clock in the morning of April 28, 1903, the deceased, accompanied by his wife, went into his bathroom, and took hold of an electric light fixture with one hand and a water faucet with the other. A blue flame and sparks were immediately noticeable at the point of contact with the electric light fixture, and he fell backward dead. Both hands were burned, and in appearance resembled flesh seared with a hot iron. He was in perfect health at the time. An autopsy disclosed that such burns may have been caused by electricity. The blood was fluid, not coagulated; and slight hemorrhages had occurred in the lining membrane of the stomach and also in the nostrils or bronchial tubes. It is conceded these conditions are commonly present in cases of death by electricity. Physicians called at the trial stated that they were unable, from the appearance of the deceased, to form an opinion as to the cause of death, but each testified, against defendant's objections, upon the assumption set forth in the following question, that in his judgment death resulted from a shock of electricity:

> Q. Now, assuming, however, that on the morning before he died, or of his death, he received an electric shock by coming in contact with an electric light fixture and at the same time putting his hand upon a water fixture to complete the circuit, taking that fact together with the conditions that you found there at the autopsy, what is your opinion as to the cause of death?

Defendant was engaged in the business of furnishing electric light to the deceased and other patrons, and to convey such electricity strung wires upon poles about one hundred feet apart in the streets of the city of Duluth. Two weeks prior to this accident two of these wires were found to be crossed, but evidence was offered tending to show they did not remain crossed, during a part of the time at least, intervening between that date and April 28. The wind blew at the rate of fifty miles an hour on the night previous. At seven o'clock on the morning of April 28 the same wires, one of which ran directly to the house occupied by deceased, and connected with his electric light fixtures, were

again found to be crossed at the same place. One was a primary and the other a secondary wire. The former carried twenty two hundred volts of electricity, and at the place of contact, which covered a distance of approximately sixteen feet, the coating which operates to insulate the wire was in one place worn off, and a blue flame was emitted from such wire at this point of contact. Five hundred voltage is sufficient to cause death. Secondary wires ordinarily carry a voltage of not to exceed one hundred. On the morning of the 28th, while such wires were crossed, another party in the basement of the house occupied by the deceased received a terrific shock and was knocked down upon touching an electric fixture with his hand, which was encased in a heavy glove. The glove was badly burned. We are of the opinion the admission of this evidence, as well as the evidence tending to show that such wires were crossed at seven o'clock on the morning of the accident, was not error. While the conditions existing after an occurrence are ordinarily inadmissible as tending to show a prior state of facts, still such conditions are often extremely material, and almost conclusive. Evidence was offered tending to show that the insulated material upon the primary wire was so badly worn as to indicate that it had been in this condition a number of days, which fact, independent of other considerations, made such evidence material, as it tended to show the wires had been crossed for considerable time before the accident.

It appears from the record that electric wires are ordinarily hung with a slack of five inches for every one hundred feet, for the purpose of allowing for changes in temperature. The weight of evidence indicates that one inch of slack in a wire will produce four inches of sag between poles one hundred feet apart. These wires were strung by appellant sixteen inches apart upon a single cross-arm. The evidence offered was conflicting, but tended to show the sag at the point of contact to be from two to four feet. There was sufficient sag so that the primary wire swung under and looped back over the secondary wire. It is conceded that the weight of the wire gradually increases the sag, and requires that such wires be shortened from time to time. A rising temperature increases the length of wire, and, conversely, cold shortens it. For this reason a slack of four or five inches is necessary between posts one hundred feet apart.

Plaintiffs based their cause of action upon three distinct acts of negligence. They were tersely stated in the charge of the court as follows:

> The negligence, if any, may have been with respect to the original construction in placing the wires too close together, or it may have been in placing or allowing the wires to become too slack as suspended from the cross-arm, or it may have been only in allowing the wires to become and remain crossed, although there may have been no negligence in the other particulars. Although the construction and maintenance, including the suspension of the wires, may have been all that reasonable care could require, there may still have been negligence if the wires were permitted to become crossed, and to remain so for an unreasonable length of time, no matter what the cause.

We are of the opinion the evidence clearly sustains the verdict of the jury in finding deceased came to his death from a shock of electricity; that such electricity passed into his house from the primary wire over the secondary wire referred to; and that the questions involving the negligence of appellant either in stringing the wires dangerously close together, or in permitting them to become too slack, or in allowing them to remain crossed for an unreasonable length of time, were fairly submitted to the jury for determination.

Evidence was offered tending to show the wires were permitted to sag approximately four feet; that they had been crossed two weeks before, and, after a high wind, were crossed on the morning deceased came to his death. Taken in connection with the fact that wires carrying a deadly current were strung but sixteen inches apart, we are of the opinion the evidence supports the verdict. The fact that a high wind was blowing the night before cannot be pleaded as an excuse, as the court will take notice that high winds are to be expected in that climate.

In our judgment, the court did not err in allowing the physicans to answer the question above set forth. Independent of knowledge that the deceased received a shock of electricity, the physicians, after a careful examination, were unable to form a definite opinion as to the cause of death. As we have seen, clear and convincing proof was offered tending to show that a deadly voltage of electricity was carried over the secondary wire into the house of the deceased. Taken in connection

with other evidence offered, it was not error to assume the facts stated in the question, and upon this hypothesis invoke the judgment of experts.

At the request of plaintiffs the court charged:

> First. If an occupation or business is attended with danger, but can be prosecuted by proper precautions, without fatal results, every reasonable effort must be made by the promoters of such business to adopt such precautions, and the greater the danger the greater the degree of care required in the pursuit of the business; and if a business is attended with great and unusual danger every reasonable effort must be made to adopt and use all the means readily obtainable and known to science for the prevention of accidents and injury, and the neglect so to do will be regarded as proof of culpable negligence.
>
> Second. It is due to the patrons of the defendant electric company that it shall be required to exercise a high degree of care in the construction, extension, and care of its wires and poles, to the end that said patrons may not be injured by having a high and dangerous current of electricity turned into the electric light fixtures in the houses of said patrons. In all cases where the danger to be apprehended is great, care and watchfulness must be commensurate to the danger.

Elsewhere the trial court charged the jury:

> In the construction, maintenance, and operation of the wires in question it is the duty of the defendant to exercise ordinary reasonable care to prevent injury to persons who might have occasion to use the current therefrom for lighting purposes. By 'ordinary and reasonable care' is meant such care as an ordinary, prudent, and careful person, having in mind the dangers to be apprehended, would exercise under the same circumstances. The precautions necessary to be taken in the exercise of reasonable and ordinary care vary with the circumstances of each particular case and the degree of hazard connected therewith; greater precautions being necessary in the case of great hazard, and less in cases where there is little danger.

However, defendant was not charged with negligence arising from the failure to adopt and use all means readily obtainable and known to science for the prevention of accidents; therefore the language used in the first request, though perhaps too broad as an abstract proposition, is not strictly appropriate to the issue, and, in our judgment, did not mislead the jury.

In Hoye v. Chicago, M. & St. P. Ry. Co., 46 Minn. 269, 48 N. W. 1117, the following language is used: "Reasonable care is all that is required. But this must be proportionate to the risks to be apprehended and guarded against." The rule adopted therein as well as in the case at bar is more broadly stated in Keasbey on Electric Wires, § 245, as follows: "Electric companies are bound to use reasonable care in the construction and maintenance of their lines and apparatus. This care varies with the danger which would be incurred by negligence. In cases where the wires carry strong and dangerous currents of electricity, and the result of negligence might be exposure to death or serious accident, the highest degree of care is required." Taking the charge as an entirety, we are of the opinion the court did not err. Under such circumstances reasonable care requires the exercise of a high degree of diligence. City v. Conery, 61 Ark. 381, 33 S. W. 426; Denver v. Simpson, 21 Colo. 371, 41 Pac. 499; Haynes v. Raleigh, 114 N. C. 203, 19 S. E. 344; Alton v. Foulds, 81 Ill. App. 322; Fitzgerald v. Edison, 200 Pa. St. 540, 50 Atl. 161; Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464. See also Hoye v. Chicago, M. & St. P. Ry. Co., 46 Minn. 269, 48 N. W. 1117.

Evidence was offered showing that the electrical appliances in the house occupied by the deceased were placed there by experts employed by him, and were defective in this: That the socket of the electrical fixture which deceased grasped at the time of his death was not properly insulated in all its parts, and that the absence of proper insulation rendered it possible for a tremendous electrical current to pass through such fixtures upon coming in contact with his hand at a moment when with his other hand he touched a metallic ground connection. It is urged this was negligence on the part of deceased and precludes a recovery. We are of the opinion this contention cannot be sustained. House fixtures are not constructed with a view of connecting wires with death-dealing currents. It appears from the record, secondary

wires ordinarily carry a voltage of but one hundred, or one-fifth the amount of a deadly current, and one twenty-second part of the voltage which the evidence tends to show passed over the wire in question and through the body of the deceased. The deceased was not an electrical expert, and, unlike appellant, he was not engaged in a business which charged him with special knowledge in the premises. We cannot say he was guilty of negligence in not anticipating that primary and secondary wires might become crossed in the streets, and that it was his duty to take precautions to guard against danger therefrom. Neither can we say that his failure to do so was the proximate cause of his death. On the other hand, appellant was charged with ordinary care in each of the particulars submitted to the jury, and we are of the opinion that the evidence sustains the implied finding that it did not exercise such care; and also that other errors assigned are without prejudice to the substantial rights of appellant, and do not constitute reversible error.

Order affirmed.