# MAGDALENE PATTOCK, AS SPECIAL ADMINISTRATRIX v. ST. CLOUD PUBLIC SERVICE COMPANY.[1]

April 28, 1922.

No. 22,701.

**Presumption of due care.**

1. Plaintiff's intestate was working upon a roof near which defendant had strung three wires heavily charged with electricity. When found he was lying on a cross-arm, both hands gripped onto a wire. He was unable to talk and afterward died from the shock. The presumption is that he was in the exercise of due care at the time of the accident.

**Contributory negligence for the jury.**

2. Under such circumstances the question of contributory negligence is for the jury, unless the evidence shows such negligence conclusively.

**Care required of electric company.**

3. Electric companies are bound to use reasonable care in the construction and maintenance of their lines. Where the wires are so placed that persons are liable to come into close proximity with them, a high degree of care is required.

**Verdict of negligence supported by evidence.**

4. Evidence considered and *held* to support the findings of the jury that the defendant was guilty of negligence.

Action in the district court for Stearns county to recover $7,950 for the death of plaintiff's intestate. The case was tried before Roeser, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the evidence denied its motion for a directed verdict, and a jury which returned a verdict for $7,500. From an order denying its motion for judgment notwith-

[1]Reported in 187 N. W. 969.

standing the verdict or for a new trial, defendant appealed. Af
firmed.

*H. H. Sullivan* and *J. D. Sullivan*, for appellant.
*E. W. Swenson* and *Donohue & Quigley*, for respondent.

QUINN, J.

Action to recover for the wrongful death of Anthony Pattock,
for the benefit of his heirs, caused by the alleged negligence of the
defendant company, which is engaged in generating and distribut-
ing electricity to consumers. There was a verdict in favor of plain-
tiff for $7,500. From an order denying its alternative motion for
judgment or for a new trial, defendant appeals.

No exception was taken to the portion of the charge covered by
appellant's fourth assignment of error, nor was it assigned as error
in the motion for a new trial. We discover no reversible error in
the charge covered by other assignments. This view of the case
leaves for consideration whether the proofs as disclosed by the record
show such negligence on the part of appellant as to entitle respon-
dent to recover.

The record discloses that the St. Cloud Granite & Marble Works
conducted an establishment for the dressing and finishing of granite
in this state. It procured electric power from the appellant for that
purpose. Early in 1920 the granite company undertook to enlarge
its power room and to that end employed a man by the name of
Slattery to do the carpenter work in constructing a lean-to on the
north side of the main building. It was all completed except a
little siding and some composition covering on the roof when Slat-
tery was taken sick and he employed Anthony Pattock, plaintiff's
intestate, to do the balance of the carpenter work. Pattock com-
menced work on February 18. Three days later appellant, at the
request of the granite company, changed the wiring and connected
it with the machinery, decedent being present and observing the
work. Two days later decedent met with the accident which result-
ed in his death.

The granite company's main building is a long frame structure
extending east and west; on the north side thereof was an old lean-

to where the power machinery, which was operated by electricity, was kept. The new lean-to extended from the old lean-to east to the end of the main. The eaves thereof were within about eight feet of the ground. The roof projected over the side and end of the building about one foot. It was quite flat, covered with composition roofing laid in strips lengthwise of the building, and at the east the ends were folded over and nailed to the edge of the roof boards. There was a cross-arm fastened to the northeast corner of the main building about three feet above the roof of the lean-to. The wiring was done by extending three wires from this cross-arm north to a new cross-arm at the northeast corner of the new part a few inches below the roof, so that the inner wire passed within an inch or two of the east edge of the roof. The three wires were then tapped, and other wires attached thereto and passed into the building through auger holes. The wires had the usual weather-proof insulation.

On Monday, two days after the wiring, decedent was at work upon the roof. At 9:30 the current was turned off and the stone workers quit work. One workman, however, who remained about the building in the afternoon and was engaged in wheeling refuse from the main building, testified that during the afternoon he saw decedent at work on the roof, that about 20 minutes thereafter he heard a noise and went out to ascertain what it was, and that decedent was lying upon the cross-arm at the northeast corner of the lean-to with both hands gripped onto the wires. The current had been turned on and he had received a shock. When found he was unable to relate how the accident happened. He was 44 years of age at the time and vigorous in body and mind. There was no eye-witness to the accident. A ladder was about the place that might have been used in climbing onto the roof, but it was not in place after the accident so as to indicate its having been so used. There was a short cleat nailed onto the corner board about midway between the cross-arm where decedent was injured and the ground; also a sawhorse thereabouts which could have been used in connection with the cleat in climbing onto and off the roof. There was considerable refuse around the corner below the cross-arm and the ground was uneven. It is evident from the position of his body that decedent did not

come into contact with the wires directly from the ground. The contention made by respondent as to the distance the wire was from the ground and as to a pile of refuse being near the northeast corner, is of little importance in arriving at how the accident occurred. It is reasonable that, if decedent came into contact with the wires while attempting to climb down from the roof by way of the cross-arm and cleat, he was guilty of contributory negligence. It appears that shortly before the fatal accident he was at work upon the roof.

Though contributory negligence on the part of the deceased is a defense, there is a strong presumption that he was in the exercise of due care at the time of the accident. The question of contributory negligence in such cases is for the jury, unless the evidence shows such negligence conclusively. The evidence is not such as to compel a finding that deceased was guilty of contributory negligence as a matter of law. Sheehy v. Minneapolis & St. L. R. Co. 132 Minn. 307, 156 N. W. 346; Searfoss v. Chicago, M. & St. P. Ry. Co. 106 Minn. 490, 119 N. W. 66; 1 Dunnell, Minn. Dig. § 2616. The trial court, under careful instructions, left that question to the jury.

It appears that the carpenter work was not completed at the time the wiring was done, and that workmen would be required to be near the wiring in order to complete the roof. The wires had the usual weather-proof insulation. There was testimony to the effect that, in putting heavily charged wires in places where persons are apt to be, it was customary to include them in conduits or some means of protection other than mere weather-proof insulation, and that a failure so to do under such circumstances would be dangerous. The test to be applied in such cases is:

"If a man does an act, and he knows, or by the exercise of reasonable foresight should have known, that in the event of a subsequent occurrence, which is not unlikely to happen, injury may result from his act, and such subsequent occurrence does happen and injury does result, the act committed is negligent, and will be deemed to be the proximate cause of the injury." F. T. & S. Rothenberger v. Powers Fuel Co. 148 Minn. 209, 181 N. W. 641. See also Tozer v. Ry. Co. 195 Mich. 662, 162 N. W. 280.

The wires carried a voltage of 2,200. They had been tapped near the cross-arm where the accident occurred. There was testimony to the effect that at or near this point the insulation was worn off, and that if the taps were not properly made they would create a dangerous situation and a person coming in close proximity to or in contact with such a condition would be liable to receive a shock. Electric companies are bound to use reasonable care in the construction and maintenance of their lines. Where the wires carry strong currents a high degree of care is required. Gilbert v. Duluth Gen. Elec. Co. 93 Minn. 99, 100 N. W. 653, 106 Am. St. 430; Musolf v. Duluth Edison Elec. Co. 108 Minn. 369, 122 N. W. 499, 24 L. R. A. (N. S.) 451; Hoppe v. City of Winona, 113 Minn. 252, 129 N. W. 577, 33 L. R. A. (N. S.) 449, Ann. Cas. 1912A, 247. We are of the opinion that the testimony justifies the verdict of the jury.

Affirmed.