# C. A. NEUMANN v. INTERSTATE POWER COMPANY AND ANOTHER.[1]

December 20, 1929.

No. 27,410.

[1]Reported in 228 N. W. 342.

*Briggs, Weyl & Briggs,* for appellant power company.
*James A. Carley,* for appellant village of Lewiston.
*Brown, Somsen & Sawyer,* for respondent.

HOLT, J.

Defendants appeal from the order denying their motion in the alternative for judgment non obstante or a new trial. The action is to recover for the death of O. H. Nelson, plaintiff's intestate, alleged to have been caused by the wrongful act and negligence of defendants.

The short facts concerning Nelson's death are these: He and Dr. Moulton were tenants of a duplex situated on lot 4 in block 1 of Litcher's Addition to the village of Lewiston this state. There are no sewers in the village, but buildings with modern conveniences have cesspools. In 1926 a cesspool for this duplex caved in and, instead of repairing the same, another some 20 feet deep and 8 feet wide was constructed on the rear of the lot close to the line of the

48

public alley. The lot fronted north on the main street of the village, upon which also was located state highway No. 7. On both sides of this street or highway the village was closely built up. The alley appears to have been little used. No one drove clear through it. Outbuildings and structures connected with the buildings fronting the highway were more or less close to the alley, but south of the alley appear no buildings, it being field or pasture. The cesspools had to be pumped or bailed out frequently. A four-inch pipe protruded some three feet above the surface or covering of the cesspool in question, and a 20-foot 1½-inch iron pipe was provided to insert through the larger pipe into the cesspool, which could then be emptied by attaching a pump to the pipe.

The defendant power company, under a franchise duly obtained from the defendant village, for some years past has supplied its inhabitants with electrical current for light and power. On the north line of the alley mentioned, passing in rear of said lot 4, are 20-foot wooden poles, with a cross-arm at the top, upon which are strung four wires carrying electric current. The two middle wires are insulated and carry the harmless current of 110 volts. The outer wires are not insulated and carry a current of 2,300 volts, fatal to anyone coming in contact therewith when grounded. The poles carrying the wires past the cesspool were 123 feet apart, so there was a sag of the wires above the cesspool making their distance from the ground about 19 feet.

It was reported to Nelson or Dr. Moulton that the contents of the cesspool backed into their basement, and shortly after one o'clock in the afternoon of May 12, 1928, the two men went out to pump it out. A few minutes later both were found dead near the cesspool with the long iron pipe near, clearly showing that in raising the same to insert in the 4-inch pipe it had come in contact with one of the high voltage wires and the deadly current grounded through the two men having hold of the pipe. Their hands and feet had electric burns.

The complaint alleged three items of negligence of the defendant power company in respect to the construction and maintenance of these high voltage power lines, namely, too low elevation of the

wires above the ground, want of insulation, and absence of warning that they carried a deadly current. The defendant village was charged with knowledge of the other defendant's negligence and that with such knowledge the wires were so maintained by the express authorization and permission of the village.

There is scarcely need of citing authorities holding that one who maintains wires transmitting so deadly electric current as the two outer ones here involved must exercise care commensurate with peril reasonably to be apprehended to those who may have occasion to come in proximity to them. In this court the high degree required of those who transmit electric currents of sufficient voltage to endanger life has been adequately pointed out in Gilbert v. Duluth G. E. Co. 93 Minn. 99, 100 N. W. 653, 106 A. S. R. 430; Musolf v. Duluth E. E. Co. 108 Minn. 369, 122 N. W. 499, 24 L.R.A.(N.S.) 451; Hoppe v. City of Winona, 113 Minn. 252, 129 N. W. 577, 33 L.R.A.(N.S.) 449, Ann. Cas. 1912A, 247; Davidson v. Otter Tail Power Co. 150 Minn. 446, 185 N. W. 644; Thornton Bros. Co. v. Northern States Power Co. 151 Minn. 435, 186 N. W. 863, 187 N. W. 610; Pattock v. St. Cloud P. S. Co. 152 Minn. 69, 187 N. W. 969.

But appellants insist they had no reasonable ground to apprehend that anyone would be likely to handle an iron pipe 20 feet in length in the vicinity of these wires. There was evidence that this pipe had always been used in emptying both the former and the present cesspool. The maintenance man or lineman of the power company knew of the present cesspool, had seen the manner in which a cesspool was emptied on these premises, but claimed a hose and not a pipe was used. The conflict was for the jurors to settle. At any rate it was for them to say whether defendants should not have apprehended the peril inherent in these uninsulated, high current wires overhanging this cesspool and near other structures adjacent to this alley, at the height they were carried, and with such warning as then present. From other jurisdictions situations somewhat similar to the instant case gave rise to a cause of action in Howell v. San Joaquin L. & P. Corp. 87 Cal. App. 44, 261 P. 1107; Braun v. Buffalo G. E. Co. 200 N. Y. 484, 94 N. E. 206, 34 L.R.A.

(N.S.) 1089, 140 A. S. R. 645, 21 Ann. Cas. 370; Burrows v. Living-ston-Niagara Power Co. 217 App. Div. 206, 216 N. Y. S. 516; Ferrari v. N. Y. C. R. Co. 224 App. Div. 182, 230 N. Y. S. 60 (affirmed on opinion below by the court of appeals, 250 N. Y. 527, 166 N. E. 311); Card v. Wenatchee Valley G. & E. Co. 77 Wash. 564, 137 P. 1047. In the California case the height of the wires was lower than fixed by the railroad commission and is in that respect different from the case at bar.

Here appellant contends upon the testimony of its linemen or maintenance men that insulation of these high voltage wires would not have prevented the fatalities. These witnesses were not electrical experts, and their testimony that a current of this voltage could not bridge a given small gap did not compel the jury to accept as a fact that insulation would not have averted Nelson's death. In addition the evidence showed that in the village of Lewiston the proportion of the power company's insulated wires to its uninsulated was as 2 to 1; that in some of the neighboring villages all its high power transmission wires were insulated and in others the uninsulated wires were being replaced as occasion arose with insulated. And in nearly every case of those above cited it appears that want of insulation or defective insulation enters as an item indicative of negligence. Of course in considering defendants' negligence with regard to the height of the wires, the absence of insulation, and the failure to warn the public as to their character, the jury need not find actionable negligence as to each item separately; but if all three, viewed in conjunction, established that defendants' want of proper care caused the death of Nelson, a recovery would be justified.

We are not impressed with appellants' claim that there could be no negligence as a matter of law, since there was a compliance with this provision of G. S. 1923 (2 Mason, 1927) § 7536:

"Any * * * power company may use public roads for the purpose of constructing, using, operating, and maintaining lines, subways, canals, or conduits, for their business, but such lines shall be so located as in no way to interfere with the safety and convenience of ordinary travel along or over the same; * * *."

It is contended that when power wires are high enough for the safety and convenience of ordinary travel upon public streets and highways there is no room for finding negligence. The statute quoted is one granting public service corporations the use of public streets and highways on condition that what is thereupon maintained by such corporations shall in no way interfere with the safety and convenience of ordinary travel along or over the same. It has no reference to persons not travelers on highways who are engaged in their own pursuits adjacent to high voltage power lines. Here the jury could find that at least one of the deadly wires was suspended over the private property on which the men were when they came in contact with the current. Even if there was a compliance with the provision of the statute above quoted, it was not decisive against these men on their rented premises who had work to do in proximity to the power wires. We do not consider Collar v. Bingham Lake R. T. Co. 132 Minn. 110, 155 N. W. 1075, L. R. A. 1916C, 1249, to have any bearing upon the case at bar.

That the situation was dangerous both defendants realized, for two years before Nelson's death the village requested the power company to take steps to warn of the peril. The power company acquiesced and painted a red cross on the poles, visible on the alley side. Was this warning adequate? There was no printed or written notice that any death-dealing wires were carried. The red paint had not been touched up for two years. The pictures of the post nearest the cesspool introduced by defendants indicate no paint or sign. Witnesses testified that there were no visible signs. We think the efficiency of the warning was upon this record for the jury.

The village cannot as a matter of law be held free of negligence. As already stated, it realized the need of warning. It had granted the right to the power company to string its wires in the alley and had knowledge of the way in which they were maintained, the high voltage ones uninsulated. It also knew how inadequate was the warning the power company had given. The village was not entitled to judgment non obstante.

Hardly anything need be said as to the defense of contributory negligence of Nelson. He is dead, and the presumption that he used due care to avoid death aids plaintiff. He and Dr. Moulton had lived there only ten months. There is no evidence that either had been in the alley and had seen the red cross, even if it was then visible. To men not acquainted with power lines the outer bare wires might have been taken as not dangerous because not insulated as were the harmless inside ones.

Error is assigned upon this part of the charge:

"The fact that the defendant power company would be put to expense if they insulated or raised the wires in question does not alone constitute a defense but should be taken into consideration by you in connection with the other facts and circumstances shown by the evidence in determining whether or not the defendant Interstate Power Company exercised the care required of it by law."

If there be any fault at all in the instruction it is that it is too favorable to the appellants. It was self-evident to the jury that insulated and more elevated wires would cost some more than did the ones there at the time of the accident, even though the cost was not made an issue at the trial.

No error can be predicated upon a refusal to give an instruction not requested until after the completion of the charge and then orally. Furthermore, the condition and use of the alley and the appearance of the structures adjacent were so carefully and fully presented by defendants, not only by oral testimony but by photographs, that the jury could not well have failed to "have in mind the conditions at the point of the accident as to the use made of the property and the alley in the vicinity," without the court so instructing. We find no reversible error in the record.

The order is affirmed.