FRED P. FARIBAULT v. NORTHERN STATES POWER COMPANY.[1]

March 31, 1933.

No. 29,212.

¹Reported in 247 N. W. 680.

*Samuel A. Anderson* and *Russell M. Carlson,* for appellant.

*Briggs, Weyl & Briggs,* for respondent.

DIBELL, JUSTICE.

Action to recover damages for death by wrongful act. The court directed a verdict for the defendant. Plaintiff appeals from the order denying his motion for a new trial.

The plaintiff's intestate was working for a house-mover and was killed by an electric shock from high tension wires of the defendant strung on poles along the roadway when helping get the house from the roadway onto the adjoining land.

■ It is the rule that one making use of electricity must exercise an amount of care commensurate with the danger involved. The degree of care is properly defined as ordinary care; but what constitutes ordinary care increases as the danger increases. A high degree of diligence may be required to constitute ordinary care, and the care exercised must be a care commensurate with the dangers reasonably to be apprehended. Gilbert v. Duluth G. E. Co. 93 Minn. 99, 100 N. W. 653, 106 A. S. R. 430; Musolf v. Duluth E. E. Co. 108 Minn. 369, 122 N. W. 499, 24 L.R.A.(N.S.) 451; Hoppe v. City of Winona, 113 Minn. 252, 129 N. W. 577, 33 L.R.A.(N.S.) 449, Ann. Cas. 1912A, 247; Drimel v. Union Power Co. 139 Minn. 122, 165 N. W. 1058; Davidson v. Otter Tail Power Co. 150 Minn. 446, 185 N. W. 644; Thornton Bros. Co. v. Northern States Power Co. 151 Minn. 435, 186 N. W. 863, 187 N. W. 610; Pattock v. St. Cloud P. S. Co. 152 Minn. 69, 187 N. W. 969; Bunten v. Eastern M. P. Co. 178 Minn. 604, 228 N. W. 332; Neumann v. Interstate Power Co. 179 Minn. 46, 228 N. W. 342; Weber v. J. E. Barr Packing Corp. 182 Minn. 486, 234 N. W. 682.

■ The case of Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640, 641, not involving an injury coming through the use of electricity, but stating the fundamental principle upon negligence and proximate cause, is cited and discussed by counsel. It is pointedly valuable as applied to the allegation of negligence in this case. The court in the Christianson case said [67 Minn. 97]:

"If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all; but, if the act itself is negligent, then the person guilty of it is equally liable for all its natural and proximate consequences, whether he could have foreseen them or not. Otherwise expressed, the law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an inter-

vening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow." ·

The rule was applied to the use of electricity in Hoppe v. City of Winona, 113 Minn. 252, 129 N. W. 577, 33 L.R.A. (N.S.) 449, Ann. Cas. 1912A, 247; Bunten v. Eastern M. P. Co. 178 Minn. 604, 228 N. W. 332; Neumann v. Interstate Power Co. 179 Minn. 46, 228 N. W. 342.

█ The question now comes whether the facts were such that a jury might find negligence in the defendant. If so it was error to direct a verdict for the defendant. The question is not whether the jury might have found for the defendant. It is whether they must have found so.

The accident occurred on July 16, 1931, on Lexington avenue, also referred to as highway No. 62, about eight miles northerly of the business portion of the city of St. Paul. The highway is paved. One Prodger was moving a small one-story house from the downtown portion of the city to a point near where the accident occurred. On the westerly side of the street the defendant maintained three electric wires carrying a voltage of 2,300. It could be found that one was 16 feet and one of the other two was 12 feet 10 inches from the surface of the ground at the place of the accident. At least one of the lower two was insulated. The others were not, and none were guarded or protected; nor was there a warning sign. On the westerly side of the avenue was Lake Josephine, where there was a nucleus of houses. The space between the road and the lake had been leveled and lowered so as to be substantially even with the surface of the roadway. There was an open space there, and some improvements had been going on. A plat or map of the surroundings would have been immensely helpful as an illustration of the situation of things.

The house was 22 feet high when upon the moving apparatus. It was moved by electric motors. When it reached the open space mentioned it was turned to the left or west until nearly at right

angles with the roadway. There was traffic upon the roadway into the open space but no laid out way. There was no ditch obstructing access from the road. The poles carrying the electric wires were near the westerly line of the street. Cottagers and others were accustomed to drive from the road into the open space. It was used for parking automobiles by those coming to the lake. It was much used by motorists, especially at week-ends. Children used the open space as a playground. It was used as a baseball ground. Fishermen going to and from the lake carried poles from 6 to 18 feet high and went across it under the wires. Loads of lumber were hauled in. Jags of hay were hauled in to the contractors who were making improvements. A full load of hay was too high.

The decedent, a young man 23 years of age, was on the south slope of the roof as the house came to the wires. Another man was on the northerly slope. They had a stick a few feet long with a metal "T" hook on the end to raise wires as they traveled along the graded highway. In endeavoring to get the wire up so that the house would go underneath, the man with whom the decedent was working received a shock, and, in trying to prevent his falling off, the decedent received a shock through him and fell to the ground; at least this is a fairly inferable explanation of the accident. Both were killed by an electric shock.

The facts stated justified the jury in finding that the defendant was negligent in not having the wires insulated or in some way adequately protected, or in not having warning signs. We do not suggest that the jury should have found affirmatively on the question of negligence. All we say is that the question was one for them and not for the trial court or for us.

■ It is provided by G. S. 1923 (2 Mason, 1927) § 10433, as follows:

"Every person who shall wilfully destroy, injure, disconnect, displace, cut, break, deface, ground, or in any way interfere with any pole, cable, or wire legally erected, put up, or strung, or any underground conduit, subway or cable, or any electrical or other apparatus, lamps, transformer, switch, appliance, instrument, or machin-

ery of any kind used in the construction or operation of any electric or telephone plant, line, or system, or used in the producing, generating, or transmitting of electric light, heat, or power, or who shall aid, agree with, employ, or conspire with any other person to do any of said acts, shall be guilty of a misdemeanor."

There was no wilful destruction or interference with the wires within the meaning of the statute. The men did not intend to do them damage or to injure the defendant's property. No crime was committed.

■ It is appreciated that the moving of a house along a highway is not ordinary travel. It is an unusual use. Collar v. Bingham Lake R. T. Co. 132 Minn. 110, 155 N. W. 1075, L. R. A. 1916C, 1249; Edison E. L. & P. Co. v. Blomquist, 110 Minn. 163, 124 N. W. 969, 125 N. W. 895, 136 A. S. R. 460.

The statute gives the power company the right to use public roads for its transmission lines and requires them to be so located as not to interfere with the safety and convenience of ordinary travel. G. S. 1923 (2 Mason, 1927) § 7536. This does not prevent a finding of negligence if there is a lack of care as to one not using the roadway for travel. Neumann v. Interstate Power Co. 179 Minn. 46, 228 N. W. 342.

Order reversed.