EDITH V. ERLANDSON, TRUSTEE FOR NEXT OF KIN OF
ELWOOD O. ERLANDSON, v. NORTHERN STATES
POWER COMPANY.

104 N. W. (2d) 859.

July 22, 1960—No. 37,960.

1031. There is a statute in Minnesota substantially similar to that which was held valid in the foregoing case. M. S. A. 615.15.

484

*A. M. Bullis* and *James M. McGuire,* for appellant.
*Durham, Swanson & Lasley,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by Edith V. Erlandson, as trustee, for the wrongful death of Elwood O. Erlandson, occasioned when a television aerial which he was lifting came in contact with defendant's uninsulated distribution wire which carried 7,200 volts. The jury returned a verdict in favor of defendant, and plaintiff's subsequent motion for judgment notwithstanding the verdict or for a new trial was denied. This is an appeal from the order denying such motion and from the judgment entered in defendant's favor.

On appeal it is contended (1) that defendant was guilty of negligence as a matter of law; (2) that decedent was free from contributory negligence as a matter of law; (3) that the court erred in submitting these issues to the jury; and (4) that the court erred in its instructions on contributory negligence and in its reference to M. S. A. 326.32, subd. 1,[1] relating to regulations governing installation of electrical wiring and equipment.

The facts are as follows: Deceased was a farmer and part-time carpenter. On October 16, 1957, he was employed by Joseph and

---

[1]M. S. A. 326.32, subd. 1, provides: "All electrical wiring, apparatus, and equipment for electric light, heat, and power shall comply with the rules and regulations of the railroad and warehouse commission, the commissioner of insurance, or the industrial commission, under the authority of the state statutes and in conformity with approved methods of construction for safety to life and property. The regulations as laid down in the national electrical code as approved by the American standards association, and in the national electrical safety code as issued by the United States bureau of standards, shall be prima facie evidence of such approved methods; * * *."

Nicholas Kohn in the construction of a house on their farm about 3 miles southeast of North Branch. Prior thereto only the basement had been completed.

In 1948 defendant had constructed an electrical distribution line consisting of two wires across the farm. Therein the power came from the east, the line running westerly above the lawn about 18 feet north of the north side of the house which the parties were building. The line connected with a pole 38 feet west of the house. The wires were approximately 22 feet and 24½ feet above ground. The higher of the two carried 7,200 volts of electricity and both were uninsulated. The span between poles where the lines passed the house was some 200 feet. From a transformer, insulated wires carrying 120 volts extended to a meter pole near the house and from thence extended to the house.

On October 16, 1957, at about 3 p. m. Erlandson discontinued work preparatory to returning home. One of the Kohns then suggested that a television aerial pole be set up on the north side of the house near the lines described. The television pole was 21 feet in length with a 7-foot aerial at the top, giving the equipment an over-all length of 28 feet. A lead wire attached thereto extended downward from the aerial. Preparatory to installation, Erlandson and Joseph Kohn carried the aerial and pole to the point proposed for its installation. When they reached it, they raised the pole in order to drop it into a hole dug for its base. While this was being done the aerial came in contact with the higher of the two wires. There was a flash, and the men carrying the pole were knocked down. Erlandson was electrocuted.

Plaintiff charges defendant with negligence (1) in placing and maintaining its dangerous high-voltage, uninsulated transmission line in too close proximity to the house; (2) in failing to insulate it; (3) in failing to give any warning or notice that the transmission line carried high voltage and was dangerous; and (4) in failing to place the transformer in a location that would permit only reduced current in the area of the home.

■ We are of the opinion that it cannot be said that defendant was guilty of negligence as a matter of law. The rule governing its obligations in this respect has been expressed by this court on numerous

occasions. It is set forth in Bunten v. Eastern Minnesota Power Co. 178 Minn. 604, 608, 228 N. W. 332, 334, as follows:

"But where an electric company maintains its wires at a height at which they would not come in dangerous proximity to such persons or things as it reasonably ought to anticipate might rightfully come under or near them, it is not chargeable with negligence because someone doing an act which it had no reason to expect suffers an injury which might not have been sustained if the wires had been higher. * * *

* * * * *

"* * * it is required to provide such insulation or other safeguards only at those places where in the exercise of reasonable prudence and foresight it ought to anticipate that injury might result to some one in the absence of such protection."

See, also, Anderson v. Northern States Power Co. 236 Minn. 196, 52 N. W. (2d) 434; Knutson v. Lambert, 235 Minn. 328, 51 N. W. (2d) 580; Schroepfer v. City of Sleepy Eye, 215 Minn. 525, 10 N. W. (2d) 398; Keep v. Otter Tail Power Co. 201 Minn. 475, 277 N. W. 213; Kieffer v. Wisconsin Ry. Light & Power Co. 137 Minn. 112, 162 N. W. 1065.

■ In defining defendant's obligations, the court correctly instructed the jury as to applicable principles in accordance with the above authorities and pointed out plaintiff's claims that defendant's service line had been erected and was maintained in too close proximity to the house; that the wires had not been insulated; that no warning of danger had been provided; and finally that the installation was in violation of customary standards of safety ordinarily practiced in the area. We are of the opinion that such instructions correctly prepared the jury for determination of the issues presented with reference to defendant's negligence. Under the evidence submitted it would have been error for the court to charge that defendant was guilty of negligence as a matter of law for failing to have reasonably anticipated that someone at some time would endeavor to erect a television aerial in such close proximity to the service line that it might reasonably be

expected that the aerial would come in contact with such line notwithstanding that it was at least 22 feet above the ground.

■ It is also urged that the court erred in failing to instruct the jury that decedent was free from contributory negligence as a matter of law. With respect to this issue the jury was charged that:

"* * * there is a presumption under the law that at the time of the accident in question * * * decedent * * * was in the exercise of due care for his own safety. This presumption of due care, however, is a rebuttable presumption and may be overcome by evidence to the contrary."

We would hesitate to hold that decedent was free from negligence as a matter of law. Testimony submitted and photographs received in evidence indicate that the wires comprising the service line were in plain sight. No trees or other obstacles obscured them. Decedent, 39 years of age and trained as a carpenter, had worked for several days in close proximity to them. The rule applicable under such circumstances is covered in Peterson v. Minnesota Power & Light Co. 206 Minn. 268, 288 N. W. 588. There decedent, Gustaf Peterson, 18½ years of age, was electrocuted when a tree he was cutting down came in contact with high-tension electrical wires maintained approximately 17 or 18 feet above ground. In holding decedent negligent as a matter of law, the court stated (206 Minn. 271, 288 N. W. 589):

"* * * There is no question that he was aware of the power line's existence. * * * Nor need we speculate on the fact that Gustaf was mindful that the wires transmitted electricity. A youth of his age and background could not be ignorant of this fact. * * *

\* \* \* \* \*

"The danger of electrical energy is a matter of common knowledge. Children of early age are aware of its deadly potentialities and realize that care must be exercised, * * *. Judicial notice can be taken of the fact that it is generally known by people of even less education than Gustaf that danger lurks in electrical wires, * * *. All persons are held by the law to a certain minimum of knowledge common to the community. * * *

\* \* \* \* \*

"Gustaf must be deemed to have appreciated, as a reasonable man in his community would have, that the wires were objects of danger to him and also that contact with them was likely to produce injury or death. * * *

\* \* \* \* \*

"\* \* \* there was simply a complete failure on the part of Gustaf to heed the danger to which his conduct exposed him, for it was foreseeable that there might be a deviation of the tree from the proposed course with the complications resulting from such an event. The evidence is * * * compelling, that Gustaf was negligent as a matter of law."

See, also, Beery v. Northern States Power Co. 239 Minn. 48, 57 N. W. (2d) 838; Pattock v. St. Cloud Public Service Co. 152 Minn. 69, 187 N. W. 969.

In the instant case the issue of decedent's negligence was submitted to the jury, and the evidence to support a finding that he was negligent is stronger than that involved in Peterson v. Minnesota Power & Light Co. *supra,* where the court found contributory negligence as a matter of law. Under such circumstances, it cannot be said that the court erred in refusing to instruct that decedent here was free from negligence as a matter of law. In Neumann v. Interstate Power Co. 179 Minn. 46, 228 N. W. 342; Rue v. Wendland, 226 Minn. 449, 33 N. W. (2d) 593; Theisen v. Minnesota Power & Light Co. 200 Minn. 515, 274 N. W. 617; Standafer v. First Nat. Bank, 243 Minn. 442, 68 N. W. (2d) 362; and Schroepfer v. City of Sleepy Eye, 215 Minn. 525, 10 N. W. (2d) 398, relied upon by plaintiff as authority for such a determination, it is significant that in each of such cases the issue was submitted for the jury's determination.

■ Plaintiff urges that the instruction that "In cases of this kind, *when* evidence has been adduced which fairly preponderates and establishes a lack or want of due care on the part of decedent, then the presumption [as to due care] * * * has been rebutted and overcome, * * *" (italics supplied) was erroneous because use of the word "when" therein conveyed the impression that such evidence had actually been adduced to overcome the presumption of due care. At

the trial no correction therein was sought by plaintiff.[2] We do not feel that the instruction conveyed the impression that evidence of the kind described had actually been submitted so as to overcome the presumption of due care. In common usage the word "when" is ordinarily understood to convey the same meaning as the word "if" or as the expression "in the event that." Webster's New International Dictionary (2 ed.) (1945) p. 2910. This court has construed the word "when" to mean "in case" or "if" in Wilkinson v. Estate of Winne, 15 Minn. 123 (159); and as meaning "provided" or "in case" in Van Brunt & Wilkins Mfg. Co. v. Kinney, 51 Minn. 337, 53 N. W. 643. We are certain that the jury would understand that what the court meant by this instruction was that *if* the evidence adduced fairly preponderated to establish a lack of due care on the part of decedent, then the presumption of due care which the court had defined would be overcome. Accordingly, we find no error in the instruction.

■ At defendant's request the court instructed the jury that the "regulations as laid down in the National Electrical Code, in the National Safety Code and in the National Electrical Safety Code as approved by the American Engineering Standards Committee, shall be prima facie evidence of such approved methods * * *." This instruction is derived from § 326.32 as hereinbefore set forth. Preceding this language in § 326.32, but not included in the instructions, is the following:

"All electrical wiring, apparatus, and equipment for electric light, heat, and power shall comply with the rules and regulations of the railroad and warehouse commission, the commissioner of insurance, or the industrial commission, under the authority of the state statutes and in conformity with approved methods of construction for safety to life and property."

At the time of the instructions, no objections were made thereto. In plaintiff's motion for new trial the only error claimed in connection

---

[2]Rule 51 of Rules of Civil Procedure provides: "* * * No party may assign as error unintentional misstatements and verbal errors, or omissions in the charge, unless he objects thereto before the jury retires * * *."

therewith was that the instruction taken from § 326.32 had no application to the controversy. Here plaintiff claims that the instruction was erroneous in that it omitted that part of the statute above quoted; and also contends that because the subchapter is headed "ELECTRICIANS" its provisions would have no application to defendant as a *producer* or *distributor* of electric energy.

We believe that there was no error in failing to give the jury that part of § 326.32 omitted as above described. No evidence had been submitted and no claim made that defendant's installations were contrary to the rules and regulations of the various state commissions named therein. That part of the statute which the court did give was relevant to the issue of compliance with the safety codes. The omitted part having no relationship thereto might well have confused the jury in its determination of issues relative to defendant's negligence. As to plaintiff's contention that § 326.32 relates only to "ELECTRICIANS" because § 326.32 is so designated, we must disagree. Section 326.32 refers to the National Electrical Safety Code and makes it a part of this enactment. Part 2 of this code was submitted in evidence and reference to it indicates that it deals with the installation and maintenance of overhead and underground lines, work normally performed by producers or distributors of electrical energy as distinguished from electricians. To hold that § 326.32 applied only to electricians would leave such producers and distributors free to exercise their own judgment as to installations without regard to any rules and regulations of the safety code. We cannot believe that the legislature intended this effect for the enactment and because of its reference to the National Electrical Safety Code we must hold to the contrary. It would follow that the instruction challenged was not erroneous.

Affirmed.